2005 WY 131

**The STATE of Wyoming, Petitioner,**

v.

**Rita Ann HUMPHREY, Respondent.**

**No. 05–2.**

Supreme Court of Wyoming.

Oct. 6, 2005.

Representing Petitioner: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Michael A. Blonigan, Special Assistant Attorney General; and Ryan P. Healy, Special Assistant Attorney General. Argument by Mr. Blonigan.

Representing Respondent: Michael J. Krampner, Casper, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] This Court granted the State's petition for writ of review to determine whether the district court erred in dismissing, on speedy trial grounds, the first degree murder charge against Rita Ann Humphrey. We hold the district court erred as a matter of law in relying upon the lapse in time between the dismissal of the initial first degree murder indictment and the filing of the instant information in holding that Humphrey's constitutional right to a speedy trial was abridged. Accordingly, we reverse and remand for further proceedings.

## ISSUES

[¶ 2] The State presents the following issue for our review:

Did the district court err in including time when no charges were pending in determining whether the Respondent's rights under the Speedy Trial Clause of the Sixth Amendment to the United States Constitution and Article One, Section 6 of the Wyoming Constitution were violated?

While Humphrey has phrased the issue somewhat differently than the State, the thrust of the issues she presents is essentially the same as that posed by the State.

## FACTS

[¶ 3] The procedural history of this case is not in dispute. On November 23, 1977, Jack Humphrey, Rita Humphrey's (Humphrey) husband, died from a single gunshot wound to the head. On April 11, 1980, a grand jury returned an indictment against Humphrey, charging her with first degree murder in the death of her husband. Humphrey was arrested that same day. Three days later, Humphrey requested, and was later granted, a preliminary hearing. The parties stipulated to a June 23, 1980, hearing date, and Humphrey waived her right to a speedy preliminary hearing. The preliminary hearing failed to produce sufficient probable cause to support the murder charge, and the county court judge dismissed the case on July 2, 1980. The district court formally dismissed the indictment on August 22, 1980.

[¶ 4] The State reopened the investigation into Jack Humphrey's death in 1999. On March 5, 2004, the State once again arrested Humphrey and charged her with the

first-degree murder of her husband. Following a preliminary hearing on May 26, 2004, Humphrey was bound over to district court.

[¶ 5]  Humphrey's trial was initially set for September 27, 2004, stacked with other criminal trials.  On July 8, 2004, Humphrey filed a motion requesting that a "date certain" be set for her trial.  A month later, Humphrey appeared at her arraignment and entered a plea of not guilty to the charge.  A scheduling conference was held on August 25, 2004, and the parties agreed to a January 3, 2005, trial date.

[¶ 6]  Two days later, on August 27, 2004, Humphrey filed a motion to dismiss the first degree murder charge for lack of a speedy trial as guaranteed by the United States and Wyoming Constitutions.  Humphrey premised her speedy trial claim on the 24–year lapse in time between the filing of the initial indictment in 1980 and the filing of the instant information.  She claimed the State's delay in pursuing the case to trial substantially prejudiced her ability to defend against the charge.  The State filed its response to the motion on September 15, 2004.  In addition to the initial motion and response, the parties filed numerous other pleadings and documents supporting their respective positions regarding Humphrey's speedy trial claim.

[¶ 7]  The district court heard testimony and argument on Humphrey's speedy trial motion on October 28, 2004, and took the matter under advisement.  On December 2, 2004, the district court issued a decision letter stating it was granting Humphrey's motion to dismiss.  The district court entered its order dismissing the case on December 20, 2004.  The State filed the instant petition for writ of review seeking reversal of the district court's order, which this Court granted on January 25, 2005.

## STANDARD OF REVIEW

[¶ 8]  This Court examines de novo the constitutional question of whether a defendant has been denied a speedy trial in violation of the Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution.  *Warner v.*

*State,* 2001 WY 67, ¶ 9, 28 P.3d 21, 26 (Wyo. 2001).  We review the district court's factual findings for clear error.  *Id.*

## DISCUSSION

[¶ 9]  The Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution guarantee that the accused shall enjoy the right to a speedy trial.  In determining whether a defendant has been denied a speedy trial, this Court adheres to the test enunciated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).  *Berry v. State,* 2004 WY 81, ¶ 31, 93 P.3d 222, 230 (Wyo.2004); *Caton v. State,* 709 P.2d 1260, 1263–64 (Wyo.1985); *Cosco v. State,* 503 P.2d 1403, 1405 (Wyo. 1972).  The *Barker* test requires the balancing of four factors: the length of the delay; the reason for the delay; the defendant's assertion of his right to a speedy trial; and the prejudice to the defendant.  *Berry,* ¶ 31, 93 P.3d at 230–31.  None of these factors alone is sufficient to establish a speedy trial violation.  Rather, they must be considered together and balanced in relation to all relevant circumstances.  *Id.* at 231; *Warner,* ¶ 10, 28 P.3d at 26.  If a speedy trial violation is found to have occurred, the charge must be dismissed.  *Id.; Barker,* 407 U.S. at 522, 92 S.Ct. at 2188.

[¶ 10]  Our primary focus in this case is the district court's conclusion regarding the first factor of the *Barker* test, the length of delay attendant to the criminal proceedings.  In finding a speedy trial violation, the district court considered the entire period between the initial April 11, 1980, indictment and the January 3, 2005, trial date, constituting a delay of approximately twenty-four years and eight months.  The court then used the twenty-four-year time frame as the foundation upon which it based its further analysis.

[¶ 11]  The State contends that the district court erred in its computation of the length of delay.  We agree.  The speedy trial clock begins to run upon arrest or when charges are filed.  *Harvey v. State,* 835 P.2d 1074, 1078 (Wyo.1992).  *See also United States v. MacDonald,* 456 U.S. 1, 6–7, 102

S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982); *United States v. Marion*, 404 U.S. 307, 314–15, 92 S.Ct. 455, 460, 30 L.Ed.2d 468 (1971). However, the speedy trial guarantee is no longer applicable once charges are dismissed. *MacDonald*, 456 U.S. at 8, 102 S.Ct. at 1502. In *MacDonald*, the United States Supreme Court held that a delay which occurs between the dismissal of a charge and the subsequent refiling of the charge does not count in speedy trial calculations. *Id.* at 6–10, 102 S.Ct. at 1501–03. Four years later, the Supreme Court reemphasized that the Speedy Trial Clause has no application to the period of time in which a defendant is neither under arrest nor formally charged. *United States v. Loud Hawk*. 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986).

[¶ 12] The district court correctly determined the speedy trial clock in the instant case initially began to run when the indictment was filed and Humphrey was arrested in 1980. However, the district court erred in failing to stop the clock when the indictment was dismissed a few months later. The speedy trial clock only resumed running again when the second murder charge was filed against Humphrey on March 5, 2004. The twenty-four-year gap between the dismissal of the first charge and the filing of the second charge is excluded from the speedy trial clock.

[¶ 13] Humphrey initially argues that *MacDonald* and *Loud Hawk* have been implicitly overruled by *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). We disagree. *Doggett* is in accord with *MacDonald* and *Loud Hawk* on the issue pertinent to our review. In *Doggett*, the Supreme Court expressly reaffirmed its holding in *MacDonald* and *Loud Hawk* that "the Sixth Amendment right of the accused to a speedy trial has no application beyond the confines of a formal criminal prosecution." *Doggett*, 505 U.S. at 655, 112 S.Ct. at 2692. The formal criminal prosecution begins when "a defendant is indicted, arrested, or otherwise officially accused" and ends when "the Government, acting in good faith, formally drops charges." *MacDonald*, 456 U.S. at 6–7, 102 S.Ct. at 1501. Contrary to Humphrey's contentions,

*Doggett* clearly adheres to the *MacDonald* formula for computing the length of delay applicable to a speedy trial analysis.

[¶ 14] Turning to Wyoming law, Humphrey argues that Wyoming precedent mandates consideration of the entire time period from the filing of the initial charge to the ultimate date of trial, regardless of whether that trial stems from the initial charge or a subsequent charge, citing *Caton v. State*, 709 P.2d 1260 (Wyo.1985), and *Berry v. State*, 2004 WY 81, 93 P.3d 222 (Wyo.2004). Humphrey misreads *Caton* and *Berry*. In both cases, this Court limited the time periods relevant to speedy trial analysis to those during which formal criminal prosecutions were pending. *Caton*, 709 P.2d at 1264; *Berry*, ¶¶ 32–33, 93 P.3d at 231–32.

[¶ 15] *Caton* very specifically demonstrates that the time period between charges arising from the same criminal act are not included in the speedy trial calculation. In *Caton*, the initial information against Caton was filed on July 19, 1983. Ultimately, due to some confusion regarding what charges should be brought against Caton, three different informations were filed against him. The trial was finally held on August 29, 1984. *Caton*, 709 P.2d at 1263. Caton appealed, alleging in part that he was denied a speedy trial. This Court initially noted that the speedy trial calculation was not affected by the fact that the State changed the charges against Caton during the course of the formal criminal prosecution. In response to argument by the State, this Court reaffirmed that the speedy trial period begins to run upon the filing of formal charges and continues to run during the entire time the defendant remains under charge. If one charge is dismissed and supplanted by a different charge, the time the defendant is under either charge will be tacked as long as the different charges relate to the same criminal act. *Id.* at 1264.

[¶ 16] For our purposes, the more important aspect of *Caton* is this Court's actual computation of time. At one point, while awaiting trial, the State dismissed its then current information against Caton and did not file a new information against Caton until two days later. This Court, in accord with

*MacDonald,* considered only the time that Caton was under formal charge, excluding from its speedy trial calculation the two-day period when no charges were pending against him. *Id.* at 1264. The result was that this Court, in its speedy trial calculation, considered the period of time from the filing of the initial information up until the dismissal of the first two informations.[1] This Court then excluded the two-day time period from that dismissal until the filing of the third information. With the filing of the third information, this Court resumed its calculation and considered the time period between the filing of the third information and trial.

[¶ 17] *Berry* likewise does not support Humphrey's contention. The primary analysis in *Berry* concerned how to compute the length of delay for speedy trial purposes when a defendant is held in continuous custody from the time of initial arrest to trial. *Berry,* ¶¶ 32–33, 93 P.3d at 231–32. Clearly, that analysis is not applicable in the instant case. This Court did, however, present discussion on some fundamental principles generally applicable to computing time for speedy trial analysis:

> Once the defendant's speedy trial right has attached, it "continues until the defendant is convicted, acquitted or a formal entry is made on the record of his case that he is no longer under indictment." *This is commonly taken to mean that in the event of reindictment the date of the original arrest or charge is still controlling, but that the time between the dismissal and recharging are [sic] not counted, provided of course that the defendant is not held in custody in the interim awaiting the new charge.*

*Berry,* ¶ 32, 93 P.3d at 231 (emphasis in original) (quoting LaFave, Israel and King, 4 *Criminal Procedure* § 18.1(c), pp. 670–71). The *Berry* decision rested upon the fact Berry was held in continuous custody. Humphrey was not held in custody during the twenty-four-year period between the time the first charge against her was dismissed and the second charge was filed. Therefore, the time between the dismissal and recharging is not counted.

1. Both the first and second informations were pending against Caton at the same time.

## CONCLUSION

[¶ 18] We hold that the twenty-four years between the dismissal and refiling of charges must be excluded when computing the length of delay for constitutional speedy trial purposes. We therefore reverse the order of the district court and remand the case to the district court for further proceedings consistent with this opinion. Should the occasion arise, the district court must recalculate the length of delay, excluding the twenty-four-year time period. This new calculation will necessarily require the district court to engage in a new analysis under the four-part *Barker* test.