2007 WY 66

**Chad D. STRANDLIEN, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–8.**

Supreme Court of Wyoming.

April 26, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Nathan A. Preuss, Student Intern, State Public Defender Program. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General. Argument by Mr. Causey.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Chad Strandlien seeks review of his conviction for aggravated vehicular homicide under Wyo. Stat. Ann. § 6–2–106(b)(i) (LexisNexis 2005).[1] Strandlien con-

---

1. § 6–2–106(b)(i) states:

(b) A person is guilty of aggravated homicide by vehicle and shall be punished by imprison-ment in the penitentiary for not more than twenty (20) years, if:

(i) While operating or driving a vehicle in violation of W.S. 10–6–103, 31–5–233 or 41–

tends, among other things, that he was denied a speedy trial and that defense counsel rendered constitutionally deficient assistance by failing to consult with a pertinent expert witness. We find no speedy trial violation, but we do find that Strandlien was denied effective assistance of counsel. We therefore reverse Strandlien's conviction.

## ISSUES

[¶ 2] Strandlien raises the following issues in his opening brief:

I. Did the length of time between the traffic collision, the initial [DWUI] charge, and the subsequent Aggravated Homicide by Vehicle charge and conviction deny Mr. Strandlien's Constitutionally guaranteed right to a speedy trial?

II. Did the destruction of the blood sample prohibit Mr. Strandlien from being able to refute testimony about how much he had to drink which may have affected whether the jury believed his drinking was the proximate cause of death?

III. Was [Mr. Strandlien] unconstitutionally prejudiced by ineffective assistance of counsel when:

(A) Mr. Roybal [2] failed to communicate a plea offer; and

(B) Mr. Murray [3] failed to present available defenses that were likely to change the outcome of the trial?

IV. Did the accumulative [sic] effect of these errors prevent Mr. Strandlien from receiving a fair and just trial?

After this Court remanded the case to the district court for a hearing on Strandlien's ineffective assistance of counsel claims, Strandlien submitted a supplemental brief on the issue:

Whether trial counsel was ineffective for not hiring an expert to refute the State's theory of the case.

13–206, he causes the death of another person , and the violation is the proximate cause of the death[.]

2. Roybal was Strandlien's initial defense attorney.

## FACTS

[¶ 3] On May 29, 2001, while driving on a two-lane highway, Strandlien collided with another vehicle. The sole occupant of the vehicle, Mary Terrell, was killed. A blood sample taken from Strandlien shortly after the accident revealed a blood alcohol concentration (BAC) of .20 percent.

[¶ 4] The State initially charged Strandlien on September 12, 2001, with the misdemeanor offense of driving while under the influence of alcohol (DWUI) in violation of Wyo. Stat. Ann. § 31–5–233 (LexisNexis 2001),[4] and a warrant was issued for his arrest. Strandlien was arrested pursuant to that warrant on October 8, 2002. Approximately five months later, on March 14, 2003, the State moved to dismiss the DWUI charge, stating it intended to refile the case under a more appropriate charge. The circuit court granted the State's motion and, on March 20, 2003, entered an order dismissing the DWUI charge. On June 12, 2003, the State filed a new criminal information charging Strandlien with aggravated vehicular homicide under Wyo. Stat. Ann. § 6–2–106(b)(i). After a two-day trial commencing on January 7, 2004, a jury found Strandlien guilty on the charged offense. The district court sentenced him to a term of imprisonment of three to ten years. This appeal followed.

## DISCUSSION

### I. Speedy Trial

[¶ 5] We begin our discussion by addressing the speedy trial issue since a violation of Strandlien's speedy trial right would result in a dismissal with prejudice of the aggravated vehicular homicide charge. *Sisneros v. State*, 2005 WY 139, ¶ 17, 121 P.3d 790, 797 (Wyo.2005); *Walters v. State*, 2004 WY 37, ¶ 10, 87 P.3d 793, 795 (Wyo.2004). Strandlien did not allege a speedy trial violation below. Although we have no decision to

3. Murray replaced Roybal in September 2003 and represented Strandlien throughout the remaining district court proceedings.

4. The statute was amended in 2002 to reduce the alcohol concentration from .10 percent to .08 percent. 2002 Wyo. Sess. Laws ch. 61.

review, we will nevertheless address the issue because it implicates a fundamental constitutional right. *See Wehr v. State*, 841 P.2d 104, 113 (Wyo.1992) (it is not necessary for a defendant to assert his right to a speedy trial in order to claim a speedy trial violation).

[¶ 6] Strandlien acknowledges that W.R.Cr.P. 48(b)[5] was not violated in this case and that our review is limited to a constitutional analysis. Under both the Wyoming and United States Constitutions, we determine whether a speedy trial violation has occurred by analyzing the four-part test articulated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The *Barker* test requires the balancing of four factors: the length of delay; the reason for the delay; the defendant's assertion of his right to a speedy trial; and the prejudice to the defendant resulting from the delay. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192; *Sisneros*, ¶ 17, 121 P.3d at 797; *Warner v. State*, 2001 WY 67, ¶ 10, 28 P.3d 21, 26 (Wyo.2001). None of these factors alone are dispositive. Rather, they must be considered together and balanced in relation to all relevant circumstances. *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193; *Warner*, ¶ 10, 28 P.3d at 26.

[¶ 7] The threshold issue to be resolved is the interval to be used to calculate the length of delay. On this point, Strandlien's argument wavers as to precisely when the speedy trial clock began to run. On one hand, he claims that the speedy trial period began upon the filing of the misdemeanor DWUI information. On the other hand, he suggests that the clock started on the date of his arrest on the DWUI charge.

[¶ 8] Under existing case law, the speedy trial period begins to run upon the filing of a criminal complaint or the arrest of the defendant, whichever occurs first.[6] *State v. Humphrey*, 2005 WY 131, ¶ 11, 120 P.3d 1027, 1029 (Wyo.2005). *See also United*

*States v. MacDonald*, 456 U.S. 1, 6–7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982); *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). We have recognized that when one charge is dismissed and supplanted by another, the constitutional speedy trial clock is not affected. *Caton v. State*, 709 P.2d 1260, 1264 (Wyo.1985) Under such circumstances, "the periods of formal charge by a single sovereign for the same criminal act are tacked [together] even if the charges are different." *Id.*

[¶ 9] Based on these principles, we find that the speedy trial clock in this case began to run when Strandlien was initially charged with DWUI on September 12, 2001. The clock stopped on March 20, 2003, when the circuit court dismissed the DWUI information. *Humphrey*, ¶¶ 11–12, 120 P.3d at 1029–31; *see also MacDonald*, 456 U.S. at 6–10, 102 S.Ct at 1501–03, 71 L.Ed.2d 696. It resumed again on June 12, 2003, when the aggravated vehicular homicide charge was filed, and continued to run until Strandlien's trial began on January 7, 2004. The total elapsed time to trial, excluding the period between the dismissal and refiling of the information, was 762 days. *See Humphrey*, ¶¶ 11–12, 120 P.3d at 1029–31 (the time between dismissal and recharging is not counted in the speedy trial calculation). We agree with Strandlien that the length of delay is presumptively prejudicial and further analysis of the remaining speedy trial factors is required. *See Berry v. State*, 2004 WY 81, ¶ 34, 93 P.3d 222, 232 (Wyo.2004) (720–day delay); *Warner*, ¶ 12, 28 P.3d at 26 (658–day delay).

[¶ 10] We now turn to the reasons for the delay. On this factor we examine which party was responsible for the delay.

5.  Rule 48(b) provides criminal defendants a procedural mechanism to ensure the protections of this constitutional right. *Taylor v. State*, 2001 WY 13, ¶ 8, 17 P.3d 715, 718 (Wyo.2001). It requires criminal charges to be brought to trial within 180 days after arraignment except under specified conditions.

6.  The Speedy Trial Clause does not apply to the period of time in which a defendant is neither under arrest nor formally charged. *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). Therefore, we reject outright Strandlien's invitation to factor in the period between the criminal act and the commencement of the criminal proceedings against him.

"A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."

*Wehr [v. State]*, 841 P.2d [104,] 112–13 [ (Wyo.1992) ] (quoting *Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Official bad faith in causing delay is weighed heavily against the government. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. "Delays attributable to the defendant are deducted from the equation." *Jennings v. State*, 4 P.3d 915, 921 (Wyo.2000). "We weigh any delay properly attributable to the defendant against the delay chargeable to the State. We have frequently acknowledged a defendant may defeat his claim to a speedy trial by his own dilatory practices." *Wehr*, 841 P.2d at 113.

*Whitney v. State*, 2004 WY 118, ¶ 42, 99 P.3d 457, 471–72 (Wyo.2004).

[¶ 11] In Strandlien's case, we initially note that almost thirteen months elapsed between the filing of the DWUI information and Strandlien's arrest. As previously noted, Strandlien did not raise the speedy trial issue below. Consequently, the record is silent as to why the delay occurred in serving the arrest warrant. Given the state of the record, we cannot weigh the 13–month delay in favor of or against either party. *See generally Warner*, ¶ 13, 28 P.3d at 26.

[¶ 12] We also find that several delays occurred with Strandlien's consent and other delays were the result of Strandlien's actions. These delays, totaling 127 days, include a continuance of the initial hearing/arraignment on the DWUI charge, a continuance of his district court arraignment on the vehicular homicide charge, two continuances resulting from a change in defense counsel and a continuance of the trial date to accommodate an essential witness. The record also reveals that Strandlien filed numerous pretrial motions, including two suppression motions and a motion to dismiss. The time required to resolve these motions must also be considered in determining the reasonableness of the delay. *Vargas v. State*, 963 P.2d 984, 992 (Wyo.1998).

[¶ 13] Shifting our attention to the third *Barker* factor, Strandlien concedes he did not pursue his speedy trial right at any time during the criminal proceedings below. Although we have held that it is not absolutely necessary to demand a speedy trial in order to establish a speedy trial violation, the failure to assert that right is weighed heavily against Strandlien's speedy trial claim. *Whitney*, ¶ 52, 99 P.3d at 474; *Campbell v. State*, 999 P.2d 649, 656 (Wyo.2000).

[¶ 14] Finally, we consider the degree of prejudice Strandlien suffered as a result of the delay. We assess prejudice in light of the particular evils the speedy trial right is intended to avert: (1) lengthy pretrial incarceration; (2) pretrial anxiety; and (3) impairment of the defense. *Whitney*, ¶ 54, 99 P.3d at 475. Of these factors, the most serious is impairment of the defense "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* (citing *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193).

[¶ 15] Strandlien initially urges this Court to find that the delay herein was so lengthy as to give rise to a presumption of prejudice. In *Caton*, we held that "until delay exceeds a point where there is a 'probability of substantial prejudice,' the burden of proving prejudice should remain with the accused." *Caton*, 709 P.2d at 1266. Under the circumstances of this case, we do not find that the delay, alone, reached a point where we can say there was a probability of substantial prejudice. Therefore, we decline to relieve Strandlien of his burden of proving actual prejudice.

[¶ 16] Strandlien claims he suffered excessive pretrial anxiety "because of the nature of the charges against him and the protracted nature of the proceedings." Strandlien, however, has not identified or

addressed with any particularity the pretrial anxiety he allegedly suffered. We have held that, because a certain amount of pretrial anxiety naturally exists, a defendant must demonstrate he "suffered prejudice in an extraordinary or unusual manner." *Campbell*, 999 P.2d at 656. Strandlien has offered nothing more than a bare assertion of pretrial anxiety and, accordingly, we give this claim no consideration.

[¶ 17] Strandlien also asserts prejudice from the fact his blood sample was destroyed before he had an opportunity to have it independently tested.[7] He contends the destruction of the blood impaired his defense because independent testing "may have yielded a lower BAC than the state's testing," which could have affected the jury's determination on the issue of proximate cause.

[¶ 18] The record shows that the state lab performed two separate tests on the blood sample, and both tests revealed a BAC of .20. Testimony elicited at trial established that the machine used in conducting the testing is maintained on a regular basis and is operated under specific calibration and quality control standards. Strandlien has not challenged the validity of the state's testing. Nor has he offered any explanation as to what additional tests could have been performed or, for that matter, how retesting would have produced a different BAC result. Simply put, Strandlien provides no facts to support his speculation that further testing of the blood would have yielded a lower BAC. Consequently, we have no basis upon which we can conclude that the pretrial delay substantially impaired Strandlien's defense. Absent a showing of actual prejudice, this factor weighs against Strandlien.

[¶ 19] Balancing the *Barker* factors, we hold there was no violation of Strandlien's right to a speedy trial. Although the delay in bringing Strandlien to trial was extraordinary, the lack of evidence of actual prejudice to Strandlien, coupled with his failure to assert his speedy trial right, weighs against finding a speedy trial violation. Under the facts of this case, invoking the drastic reme-

dy of dismissal of the charge against Strandlien with prejudice is unjustified.

## II. Ineffective assistance of counsel

### Standard of Review

[¶ 20] During the pendency of this appeal, we remanded this case to the district court for a hearing on whether Strandlien was denied effective assistance of counsel. The district court determined that trial counsel rendered effective assistance. On review, we defer to the district court's findings of fact unless they are clearly erroneous. We conduct a de novo review of the district court's "conclusions of law, which include the question of whether counsel's conduct was deficient and the question of whether the appellant was prejudiced by that deficient conduct." *Robinson v. State*, 2003 WY 32, ¶ 16, 64 P.3d 743, 748 (Wyo.2003); *see also Barker v. State*, 2006 WY 104, ¶ 42, 141 P.3d 106, 119 (Wyo.2006).

### Analysis

[¶ 21] Strandlien claims he was denied effective assistance of counsel when trial counsel failed to secure the services of an expert in accident reconstruction.

"To establish that he has been denied effective assistance of counsel, a defendant is required to show that counsel's performance was deficient and that, but for this deficient performance, it is reasonably probable that the trial result would have been different." *McCoy v. State*, 886 P.2d 252, 254 (Wyo.1994). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 255 (emphasis omitted).

In *McCoy*, we recognized that failure to call an expert witness may constitute ineffective assistance of counsel. *Id.* at 255–56. In *Bloomquist v. State*, 914 P.2d 812

---

7. The blood sample was destroyed pursuant to laboratory policy in September 2002, approxi-

mately a month before Strandlien's arrest on the initial DWUI charge.

(Wyo.1996), we stated that "the defendant must show that such expert testimony was available and necessary" and that "[a]ppellant must show that an expert was available who would have testified consistently with his theory." *Id.* at 820. Showing that an expert was available who would have testified consistently on a necessary issue is proof of deficient performance; however, a defendant must also show that this deficient performance prejudiced him. *McCoy,* 886 P.2d at 256. This showing of prejudice requires proof that, but for counsel's deficient performance, the outcome of the trial would have been different. *Id.*

Lopez v. State, 2004 WY 28, ¶¶ 29–30, 86 P.3d 851, 860 (Wyo.2004).

[¶ 22] Strandlien's trial defense was that, although his BAC was above the legal limit, any impairment caused thereby was not the proximate cause of the accident. Strandlien's description of the collision was that he was driving on the highway when he came upon a vehicle traveling well below the speed limit for no apparent reason. He proceeded to attempt to pass the vehicle. As he was drawing up alongside, the vehicle, without signaling, began to make a left-hand turn. Accordingly, Strandlien's assertion is that Terrell's actions in turning into Strandlien's lane without prior notice made the accident unavoidable.

[¶ 23] In contrast, the State's two investigating law enforcement officers, Trooper Deskin and Lieutenant Zilka of the Wyoming Highway Patrol, both testified that the accident would not have occurred absent Strandlien's alcohol impairment. Trial counsel was well aware of the troopers' opinions. While we do not have a copy of their respective accident reports, both testified at a motion hearing held three months prior to trial. The version they gave of the collision at this hearing was at odds with Strandlien's version. Both troopers believed that Strandlien had adequate notice to avoid the collision had he not been impaired.

[¶ 24] Obviously, the opinions of the troopers, derived from their respective personal attempts at reconstructing the crash, directly contradicted Strandlien's account of how the collision occurred. Since the exact nature of how the collision occurred was vital to Strandlien's defense, we think a clear need was presented for Strandlien's trial counsel to consult with an independent accident reconstruction expert. As was made clear at the remand hearing, such experts were available. Under these particular circumstances, we find that trial counsel did not undertake a reasonable investigation into Strandlien's case. Specifically, the failure to pursue the services of an accident reconstruction expert constituted deficient performance.

[¶ 25] The next question we must answer is whether trial counsel's deficient performance prejudiced Strandlien.

In evaluating the prejudice component, the test is whether there is a reasonable probability that counsel's errors affected the outcome of the trial, primarily concerning whether the result was unreliable or the proceeding fundamentally unfair. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. However, an "analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), *cert. denied,* 525 U.S. 846, 119 S.Ct. 115, 142 L.Ed.2d 92 (1998); *Newsted v. Gibson,* 158 F.3d 1085, 1092 (10th Cir.1998), *cert. denied,* 526 U.S. 1093, 119 S.Ct. 1509, 143 L.Ed.2d 661 (1999).

Allen v. State, 2002 WY 48, ¶ 35, 43 P.3d 551, 564 (Wyo.2002).

[¶ 26] After the remand hearing the district court found that Strandlien's accident reconstruction expert had determined that:

a. the collision would have happened whether Mr. Strandlien was drinking or not because there was not enough time to respond to the event of Mrs. Terrell's van making a left handed turn while Mr. Strandlien was in the passing lane;

b. the state failed to properly investigate the accident;

c. the point of impact as reported and testified to by the state investigators appeared to be wrong;

d. Lieutenant Zilka was wrong in his testimony about human reaction time under these circumstances;

e. the state's testimony concerning the tungsten wire in the taillight of the decedent's vehicle was incorrect; and,

f. Trooper Deskin was incorrect in his testimony that the collision occurred at an intersection.

[¶ 27] These findings by the district court are adequately supported by the record. The transcript from the remand hearing reveals that Strandlien's accident reconstruction expert's testimony supported Strandlien's theory of defense. The expert also testified at length about the flaws in the reconstruction efforts of Trooper Deskin and Lieutenant Zilka. The expert disputed almost every element of the troopers' respective investigations and conclusions, ultimately opining that the troopers' investigations were inadequate and their opinions as to causation were invalid.

[¶ 28] After a careful review of the trial transcript, we are convinced that the absence of the services of an accident reconstruction expert prejudiced Strandlien. An expert would have testified that the collision was unavoidable, reinforcing Strandlien's version as to how the collision occurred. The expert also would have discredited the troopers' opinions as to the cause of the collision. Although trial counsel cross-examined the troopers at trial, he did not touch on the majority of the inadequacies identified by the expert. We find that had the expert testified at trial, it is reasonably probable that the outcome of Strandlien's trial would have been different.

[¶ 29] Our conclusion that this case must be reversed because of trial counsel's ineffectiveness for failing to consult an accident reconstruction expert makes it unnecessary to address Strandlien's other claims.

## CONCLUSION

[¶ 30] We hold that Strandlien's right to a speedy trial was not violated under the facts of this case. However, we find that trial counsel's assistance was constitutionally deficient and, therefore, reverse Strandlien's conviction. This case is remanded to the district court for proceedings consistent with this opinion.