265 P.3d 243 (2011)
2011 WY 159
Jeramie John Edwin LARGE, Appellant (Defendant),
v.
The STATE of Wyoming, Appellee (Plaintiff).
No. S-11-0068.
Supreme Court of Wyoming.
November 30, 2011.
*245 Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.
Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Stewart M. Young, Faculty Director, Prosecution Assistance Program. Argument by Mr. Young.
Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.
VOIGT, Justice.
[¶ 1] The appellant, Jeramie John Edwin Large, was charged with six crimes arising from an incident when he stole and crashed a vehicle. In this appeal he claims that his right to a speedy trial was violated and that he was denied his right to counsel without being adequately instructed and warned of the dangers of proceeding without counsel. Finding no error, we affirm.

ISSUES
[¶ 2] 1. Whether the appellant received a speedy trial.
2. Whether the district court properly informed the appellant of the dangers of proceeding without counsel and the penalties he faced.

FACTS
[¶ 3] A felony information charging the appellant with burglary, larceny, interference with a police officer, failure to provide personal information after a vehicular accident, and failure to give notice of an accident to police, was filed against the appellant on October 2, 2009. That same day, the appellant executed an affidavit requesting court-appointed counsel and an order appointing a public defender was entered. In the affidavit, the appellant wrote, "Rep[resent] myself w[ith] stand in counsel." Also, on October 2, 2009, the appellant waived his preliminary hearing.
[¶ 4] Ten days after the appellant completed his application for appointed counsel, but before his arraignment, the public defender's office moved to vacate its appointment because the appellant "wrote on [the *246 affidavit] that he would represent himself `with stand in counsel'."[1] Shortly thereafter, but before arraignment, the appellant filed handwritten pro se motions asking the district court for, among other things, a separation of the charges, full discovery, and medical care.
[¶ 5] On October 19, 2009, the district court conducted a hearing to address the appellant's request to represent himself with standby counsel, and the public defender's response that such was precluded by statute. At that hearing, however, a public defender advised that the appellant had recently "resubmitted an application for appointment of the public defender's office ... with the full understanding that we don't do it as stand-by counsel." The appellant confirmed that counsel's statement was correct.
[¶ 6] At an arraignment hearing on October 28, 2009, some confusion arose as to which particular public defender had been assigned to the appellant's case. The district court stated it was "not going to have this hearing without you having a lawyer," to which the appellant responded, "I'd like to proceed ... and just set it for jury trial at this time." The district court then explained to the appellant that "if technically there has been an order entered, then we need to allow that counsel to be here. But I'm going to get this set as quickly as I can."
[¶ 7] A week later, on November 4, 2009, the public defender's office filed another motion to vacate its appointment, stating:
[The appellant] has implied he will continue to make filings on his own behalf even though he has court-appointed counsel; [the appellant] has requested he be given access to a law library 1 to 2 hours a week for his legal research.
. . . .
[The appellant] is not open to any counseling or recommendations by his court-appointed attorney.
The district court set a hearing on this motion to vacate for January 6, 2010.
[¶ 8] Before the district court had an opportunity to hear the motion to vacate, the appellant filed various handwritten motions, including a motion for permission to attend his grandmother's funeral, "Motion to Represent Myself," "Motion to Set Dates for Jury Trial," "Motion to be Granted Access to Law Library," "Motion for Complete File, Discovery," "Motion Requesting Public Defenders," and a request for an "evidentiary hearing... regarding inconsistencies and statues [sic], degree of charges, etc." A few weeks later, on December 7, 2009, the appellant filed additional motions for change of venue, allegedly on "due process" grounds, including "complications of misrepresentation by public defenders [sic] office on two separate occasions" and one appointed attorney's "failing to appear to my set arraignment ... and failure to properly represent me on my matters."
[¶ 9] Given the appellant's erratic behavior and apparent desire to represent himself, defense counsel moved for a competency evaluation. On January 6, 2010, the district court heard that motion and another motion by the public defender to withdraw. At the hearing, the State argued that the motion to withdraw had "been filed partly on the request of [the appellant] making that indication that he'd like to represent himself." The appellant stated that he was "definitely [] going to trial on these charges, with or without a public defense." The district court told the appellant that before it would allow him to represent himself, it wanted to be positive that he was capable of doing so and understood that he would be held to the same standard as an attorney. The appellant responded that he would like the district court to appoint a different attorney. To that, his current public defender responded, "Your honor, we have numerous letters, correspondence from [the appellant], indicating that he chooses to represent himself." Pointing to the inconsistencies, the public defender advocated for a competency determination because "[i]t appears that one minute he would like to use our office, the next he wouldn't."
[¶ 10] The district court took the competency evaluation request under advisement *247 and on February 3, 2010, issued an order finding "that Wyoming Statute § 7-11-304(d) requires an examination of the Defendant" and the court ordered the Wyoming State Hospital to conduct an examination. On April 14, 2010, after the evaluation was complete, the district court held a hearing on the appellant's competency. At that hearing, the appellant's counsel noted that the appellant's examiner had found him competent to proceed and able to either aid and assist an attorney with his defense or represent himself. His current public defender then noted that the appellant had informed him that he would like other counsel and orally moved to withdraw as counsel. Based on the State Hospital's report, the district court found the appellant had "the capacity to comprehend his position, to understand the nature and object of the proceedings, to conduct his defense in a rational manner, and the ability to cooperate with counsel to the end that any defense may be interposed on his behalf." The court then arraigned the appellant on the six charges against him.
[¶ 11] On April 29, 2010, the appellant, through his third appointed counsel, filed a demand for a speedy trial. Then, on July 21, 2010, he filed a handwritten pro se "Motion to Address the Courts of Violating My Right to a Speedy Trial, By [sic] Constitutional Rights and Amended Rights." On September 2, 2010, he filed another handwritten pro se "Motion Requesting the Courts to Order Listed Expert Witnesses Reqiuered [sic] for Trial."
[¶ 12] The appellant's third attorney moved to vacate his appointment on grounds that he had been "appointed as [the appellant]'s counsel ... after two other Public Defenders were permitted to withdraw the Public Defender's Office due to the [appellant] acting as his own attorney by filing motions on his own behalf without conferring with counsel." Counsel also informed the district court that the appellant had resumed filing motions without informing counsel or sending copies of those motions to counsel. Furthermore, counsel advised the court that the appellant had "implied that he will continue to make filings on his own behalf even though he has Court-Appointed Counsel." Counsel requested that he be relieved of his appointment "[b]ecause the [appellant] acts as his own attorney and works at cross purposes with [the appellant's] Counsel's trial preparation."
[¶ 13] The next day, the district court heard counsel's motion to vacate his appointment. Counsel stated that he was concerned that
we're kind of working at cross purposes here. [The appellant] has continued to file motions with the Court. ... [The appellant] evidently feels that he has a great deal of knowledge regarding criminal law proceedings, and it's very difficult to work with a client if he's going to be filing his own motions and acting as his own attorney.
The appellant then explained why he had filed some of his motions, asserting, "I just want to go to trial and get some closure on this." When the district court asked him how he would like to proceed, he stated, "I'm proposing that I have my trial on the 28th, if that's okay with you, Your Honor." The district court explained to the appellant that he had placed his attorney in a difficult position and had again placed the court "in the situation of finding someone else to represent [him.]" The appellant responded that, after going through three attorneys, he "would be happy" representing himself. He then stated, "I'm definitely not waiving my speedy trial, and I'll represent myself if so be needed. ... I want to keep my trial. I want to go forward with whatever it is and get closure on this situation." The district court then sought to clarify whether the appellant wanted to decline representation by the public defender's office and proceed representing himself. The appellant replied affirmatively to both inquiries, suggesting that self-representation was the only option that would allow him to proceed to trial without additional delay. The district court agreed that appointing a new attorney would likely require a continuance and that it could not make such an appointment at that point unless the appellant waived his right to a speedy trial. The appellant indicated that he understood and stated that he did not want a *248 continuance but would proceed without counsel.
[¶ 14] Two weeks later at a pretrial hearing, the district court again addressed the appellant's decision to waive his right to counsel and represent himself. The court placed the appellant under oath and asked if he was knowingly and intelligently waiving his right to counsel. The court informed him that, at any time, he could change his mind about proceeding pro se and either retain a lawyer or ask that one be appointed. The court cautioned, however, that it would permit no further postponements of the trial, even if the appellant brought a new attorney into the case. The court also warned that it would no longer allow the appellant to represent himself if the appellant's "conduct deliberately engages in serious and obstructionist misconduct before the Court. ..." Finally, the court admonished as to specific "dangers and disadvantages to self-representation" and that the appellant's failure to accept or employ an attorney might be detrimental to his case. The appellant stated that he was not under the influence of anything that might prevent him from understating the court's advice and acknowledged that he understood the court's explanations and warnings.
[¶ 15] At the court's request, the prosecutor then outlined the substance of all six of the charges against the appellant, the range of sentences that could be imposed upon conviction of those crimes, and that the sentences could run consecutively. The appellant again stated that he understood. At that point, the court found and concluded as follows:
... the defendant has clearly been advised of his right to assistance, including his right to the assignment of counsel when he is so entitled, that the defendant possesses the intelligence and the capacity to appreciate the consequences of his decision, and that the defendant comprehends the nature of the charges and the proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case.
So you have knowingly and intelligently waived your right to counsel.
[¶ 16] A jury trial commenced on September 27, 2010, and ended the next day. The appellant was found guilty of two counts of burglary and each count of failing to report; however, he was acquitted of larceny and the jury could not reach a verdict on the interference with a police officer charge. The appellant timely appealed his convictions.

DISCUSSION

Whether the appellant received a speedy trial.
[¶ 17] In the first of two issues raised by the appellant, he asserts that he was denied his right to a speedy trial. "We examine de novo the constitutional question of whether a defendant has been denied a speedy trial in violation of the Sixth Amendment." Berry v. State, 2004 WY 81 ¶ 17, 93 P.3d 222, 227 (Wyo.2004). "The district court's findings of fact on the speedy trial issue are reviewed for clear error." Sisneros v. State, 2005 WY 139, ¶ 16, 121 P.3d 790, 797 (Wyo.2005).
[¶ 18] Speedy trial questions are governed by both the rules of criminal procedure and the federal constitution. "W.R.Cr.P. 48 governs the time period between arraignment and trial; however, delays between the time of charge and the time of trial are subject to the Sixth Amendment to the United States Constitution." Walters v. State, 2004 WY 37, ¶ 9, 87 P.3d 793, 795 (Wyo.2004) (internal citations omitted). W.R.Cr.P. 48(b)(2) requires that: "A criminal charge shall be brought to trial within 180 days following arraignment unless continued as provided in this rule." In deciding this issue, we must first determine the proper date of arraignment.
[¶ 19] The appellant argues that we should construe the hearing on October 28, 2009, as his arraignment because that was the date originally set for that purpose. The appellant's trial began on September 27, 2010, which would have resulted in a 334-day delay between arraignment and trial  far exceeding the 180 days allowed in W.R.Cr.P. 48. While the appellant advocates for that date, he also concedes that the October 28, 2009, hearing did not meet the requirements *249 of W.R.Cr.P. 10, as no charges were read and no plea was entered.
[¶ 20] The State agrees that the October 28, 2009, hearing lacked the hallmarks of an arraignment, and argues that the actual arraignment had to be delayed until April 14, 2010, which date resulted in a delay less than the 180 days prescribed by W.R.Cr.P. 48. The State contends that the appellant caused most of the delay between his arrest and arraignment as he continually undermined his appointed attorneys' efforts effectively to represent him. We agree with the State.
[¶ 21] The appellant significantly delayed both his arraignment and trial by asking numerous times for appointment of a new attorney. The record is replete with efforts by the appellant to refuse, change or dismiss counsel. The appellant initially requested "stand-in" counsel, he moved to represent himself, he requested new counsel, his third attorney moved to vacate appointment because of the appellant's lack of cooperation, and, finally, at the competency hearing the appellant requested appointment of a different attorney. All three of the attorneys appointed to represent the appellant reported that he repeatedly filed his own motions without discussing them with counsel and would not follow instructions not to file such motions. W.R.Cr.P. 48 specifically states that delays attributable to a "defendant's change of counsel or application thereof" are excluded from the 180-day period under the rule. W.R.Cr.P. 48(b)(3)(D).
[¶ 22] In addition to the delays caused by the appellant's efforts to change counsel, further delay occurred when it became necessary to determine the appellant's competency prior to arraigning him. When the appellant's competency became an issue, it was incumbent on the district court to address that matter prior to arraignment. Follett v. State, 2006 WY 47, ¶ 8, 132 P.3d 1155, 1158 (Wyo.2006) ("A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so competently and intelligently." (quoting Godinez v. Moran, 509 U.S. 389, 396, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993))). Both this Court and the United States Supreme Court have made clear that the "competency requirement continues from the time of arraignment through sentencing." Id. (citing Godinez, 509 U.S. at 403, 113 S.Ct. at 2689).
[¶ 23] W.R.Cr.P. 48 specifically excludes from the speedy trial computation "[a]ll proceedings related to the mental illness or deficiency of the defendant." W.R.Cr.P. 48(b)(3)(A). Indeed, we have said that "[w]here the primary reason for the delay is the determination of the defendant's mental competency to stand trial, Wyoming law requires suspension of all criminal proceedings until the district court can make a determination of the defendant's mental competency." Hauck v. State, 2001 WY 119, ¶ 14, 36 P.3d 597, 601 (Wyo.2001); see also Smith v. State, 871 P.2d 186, 190 (Wyo.1994) (trial court suspended proceedings to evaluate defendant's competency and arraigned him only after determining he was fit to proceed). In the present case, once the district court had adequately addressed the appellant's competency, it arraigned him on the six charges and conducted his jury trial within 180 days of that arraignment.
[¶ 24] The delays in the proceedings are attributable almost exclusively to the appellant. W.R.Cr.P. 48 specifically excluded from the speedy trial computation time delays caused by the appellant's changes of counsel and delays caused by proceedings necessary to determine the appellant's competency. Once these issues were properly addressed and settled, an arraignment was held and the appellant was tried within the required 180 days.
[¶ 25] We turn now to the constitutionally imposed speedy trial requirements. The case of Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) "set forth the benchmark test that applies to the constitutional speedy trial claims." Humphrey v. State, 2008 WY 67, ¶ 20, 185 P.3d 1236, 1243 (Wyo.2008). The Barker v. Wingo test "requires consideration of four factors in determining whether a speedy trial violation has occurred: the length of delay; the reason for the delay; the defendant's assertion of [his or her] right; and the prejudice to the defendant. *250 ... None of these factors alone are dispositive." Id. (internal citations omitted).
[¶ 26] Regarding the first factor, we have said:
This first factor is a threshold factor which requires a calculation of the length of delay in bringing the appellant to trial. Strandlien [v. State], 2007 WY 66, ¶ 7, 156 P.3d [986,] 990 [ (Wyo.2007)]. There is no precise length of delay that automatically constitutes a constitutional speedy trial violation. Berry [v. State], 2004 WY 81, ¶ 32, 93 P.3d [222,] 231 [(Wyo.2004)]. "However, when the delay is so protracted as to be presumptively prejudicial, inquiry into the other factors is required." Id.

Boucher v. State, 2011 WY 2, ¶ 10, 245 P.3d 342, 349 (Wyo.2011). In the present case, although the 363-day delay between the appellant's arrest and trial was long, it was not extraordinary. See Id. at ¶ 11, 245 P.3d at 349 (2,971 days); Humphrey, 2008 WY 67, ¶ 22, 185 P.3d at 1244 (561 days); Strandlien v. State, 2007 WY 66, ¶ 9, 156 P.3d 986, 990 (Wyo.2007) (762 days); Berry, 2004 WY 81, ¶ 34, 93 P.3d at 232 (720 days); Warner v. State, 2001 WY 67, ¶ 12, 28 P.3d 21, 26 (Wyo.2001) (658 days). Nevertheless, we will analyze the other three factors inasmuch as we have found shorter delays to warrant such. See Sisneros, 2005 WY 139, ¶ 19, 121 P.3d at 797 (found 349 days to meet the threshold requirement).
[¶ 27] Regarding the second factor  the reason for the delay  as noted above, the appellant was responsible for the majority, if not all, of the delay. See supra ¶ 24. Any delays attributable to the State are weighed against those attributable to the defendant. Strandlien, 2007 WY 66, ¶ 10, 156 P.3d at 991. "Unquestionably, delays attributable to the defendant may disentitle him to speedy trial safeguards." Berry, 2004 WY 81, ¶ 35, 93 P.3d at 232. While no single factor is dispositive, we find that under the particular facts presented here, this factor weighs heavily against the appellant's speedy trial violation claim.
[¶ 28] As to the third factor, the appellant obviously asserted his right to a speedy trial: once in his own handwritten motion, and once through his third appointed counsel. However, he did so while at the same time making a consistent and seemingly calculated effort to undermine the efforts of his court-appointed attorneys, which actions caused significant delays. Such conduct contradicted the appellant's stated desire for a speedy disposition of his case.
[¶ 29] Finally, the fourth factor focuses on the degree of prejudice that the appellant suffered as a result of the delay. Humphrey, 2008 WY 67, ¶ 28, 185 P.3d at 1245; Strandlien, 2007 WY 66, ¶ 14, 156 P.3d at 991. "We assess prejudice in light of the particular evils the speedy trial right is intended to avert: (1) lengthy pretrial incarceration; (2) pretrial anxiety; and (3) impairment of the defense." Strandlien, 2007 WY 66, ¶ 14, 156 P.3d at 991; see also Barker, 407 U.S. at 532, 92 S.Ct. at 2193. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Barker, 407 U.S. at 532, 92 S.Ct. at 2193. The appellant argues that he was prejudiced by the delay inasmuch as his incarceration "limited his legal research, hindered his ability to serve subpoenas and eliminated his ability to investigate." Such difficulties, however, are not the result of any delay in prosecution, but instead, as explained by the district court, are problems inherent in the appellant's decision to represent himself. We cannot say that the appellant suffered any delay-related prejudice that he did not cause.
[¶ 30] After analyzing the present facts under the four-factor Barker v. Wingo test, we cannot say that the delay in this case violated the appellant's Sixth Amendment right to a speedy trial.

Whether the district court properly informed the appellant of the dangers of proceeding without counsel and the penalties he faced.
[¶ 31] In this second issue, the appellant asserts that the district court failed to advise him of the dangers of self-representation and, as a consequence, denied him his right to counsel. Whether the appellant knowingly and voluntarily waived his right to *251 counsel is a constitutional issue and, therefore, a question of law we review de novo. Wilkie v. State, 2002 WY 164, ¶ 4, 56 P.3d 1023, 1024 (Wyo.2002). We consider "the record as a whole when determining whether the defendant knowingly and voluntarily relinquished his right to representation of counsel." Trujillo v. State, 2 P.3d 567, 571 (Wyo.2000).
[¶ 32] "The Sixth Amendment of the United States Constitution requires that a defendant in state court shall have the right to represent himself if the accused himself timely, knowingly, and intelligently requests the right to forgo counsel, and does not do so to cause delay." Hauck, 2001 WY 119, ¶ 16, 36 P.3d at 601-02. If a defendant elects to proceed without counsel, "the court must make him aware of the disadvantages and the dangers of self-representation." Id.
Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se.

United States v. Willie, 941 F.2d 1384, 1388 (10th Cir.1991), cert. denied, 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992) (some citations omitted). The district court's failure to conduct a complete inquiry on the record into the defendant's understanding does not require reversal when "the surrounding facts and circumstances, including [the defendant's] background and conduct, demonstrate that [the defendant] actually understood his right to counsel and the difficulties of pro se representation and knowingly and intelligently waived his right to counsel." 941 F.2d at 1389. "[A] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975).
Van Riper v. State, 882 P.2d 230, 234 (Wyo. 1994). "It is the district court's responsibility to inquire into the defendant's understanding of the charges against him, the allowable punishments, possible defenses, and the risks of proceeding pro se." Vargas v. State, 963 P.2d 984, 990 (Wyo.1998).
[¶ 33] The appellant asserts that he "in no sense voluntarily waived counsel, because the trial court did not make the meaningful inquiry necessary before [the appellant] went to trial representing himself." This contention is simply inaccurate. As noted above, the district court cautioned the appellant that it considered "it detrimental for [the appellant] to not accept or employ counsel to represent [him]." See supra ¶ 14. Also, it expressly detailed the numerous "dangers and disadvantages to self-representation." See supra ¶ 14. Furthermore, the district court properly explained to the appellant the charges and potential sentences he faced, and the appellant told the court he understood this advice. See supra ¶ 14. The district court concluded clearly and on the record that the appellant had "knowingly and intelligently waived [his] right to counsel," stating
that the defendant has clearly been advised of his right to assistance, including his right to the assignment of counsel when he is so entitled, that the defendant possesses the intelligence and the capacity to appreciate the consequences of his decision, and that the defendant comprehends the nature of the charges and the proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case.
Finally, the court expressly told the appellant "that at any time you can change your mind to retain counsel to represent you or to petition the Court for appointment of counsel to represent you to assist with your defense."
[¶ 34] After reviewing the record, we find that the district court adequately instructed the appellant on the dangers of proceeding without counsel and he was not denied the assistance of counsel.

CONCLUSION
[¶ 35] We conclude that the appellant was afforded a speedy trial as it occurred within *252 the 180-day time period required by W.R.Cr.P. 48 and met the constitutional requirements of the Sixth Amendment to the United States Constitution. Also, we conclude that the appellant's right to counsel was not violated as he was properly informed and warned of the dangers of proceeding without counsel.
[¶ 36] We affirm.
NOTES
[1] Wyo. Stat. Ann. § 7-6-107 (LexisNexis 2011) specifically states that a person who elects to represent himself shall not be entitled to "standby counsel" under the Public Defender Act.