2005 WY 139

**Ralph SISNEROS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Nos. 04–15, 04–237.**

Supreme Court of Wyoming.

Oct. 25, 2005.

Rehearing Denied Nov. 15, 2005.*

* Justice Burke took no part in the consideration of this matter.

Representing Appellant: Ken Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Senior Assistant Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Peter Free, Assistant Attorney General. Argument by Mr. Free.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, JJ., and WALDRIP, D.J.

KITE, Justice.

[¶ 1] Ralph Sisneros appeals from the judgment and sentence entered by the district court after he pled guilty to two counts of third degree sexual assault. Mr. Sisneros reserved his right to appeal the district court's denial of his motion to dismiss for violation of his right to a speedy trial and the district court's ruling that the minor victim, KF, was competent to testify. We affirm.

## ISSUES

[¶ 2] Mr. Sisneros states the following issues on appeal:

I. Was appellant denied his right to a speedy trial, and should the charges against him have been dismissed with prejudice due to violation of W.R.Cr.P. 48 and his constitutional right to a speedy trial?

II. Did the trial court err in finding the alleged victim, KF, competent to testify against appellant?

The State rephrases the issues as follows:

I. Was appellant denied his right to a speedy trial under W.R.Cr.P. 48 and the United States and Wyoming Constitutions?

II. Did the trial court err in finding the alleged victim, KF, competent to testify against appellant?

## FACTS

[¶ 3] Mr. Sisneros lived with KF and her mother for a few months in 2002. At that time, KF was six years old. In October 2002, Mr. Sisneros' former girlfriend reported to the Cheyenne Police Department that Mr. Sisneros had told her he was molesting KF. The police investigated the allegations against Mr. Sisneros and learned of several instances where Mr. Sisneros had touched KF inappropriately. He also watched pornographic movies and masturbated in her presence.

[¶ 4] The State charged Mr. Sisneros with three counts of third degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–304(a)(ii) (LexisNexis 2005) and two counts of taking indecent liberties with a minor in violation of Wyo. Stat. Ann. § 14–3–105(a) (LexisNexis 2005). He was arraigned on April 28, 2003, and pled not guilty to all of the charges. An attorney from the public defender's office was appointed to represent Mr. Sisneros and filed a written demand for a speedy trial. The trial was originally scheduled to begin on July 15, 2003, in a stacked setting. Because of its placement in the trial stack, Mr. Sisneros' trial was continued on three occasions until October 7, 2003. On October 1, 2003, the State filed a motion to continue the trial because its lead investigator would not be available to testify during the week of October 7, 2003. The court held a hearing on the State's motion to continue, and Mr. Sisneros' attorney remarked that the defense also needed additional time to prepare. The district court treated the motion as a joint motion to continue and reset the trial to begin on October 21, 2003.

[¶ 5] On October 14, 2003, Mr. Sisneros filed a motion to disqualify the entire Laramie County District Attorney's Office from prosecuting him. He claimed the State had listed Jon Forwood, the Laramie County District Attorney, as a fact witness in the case, thereby creating a conflict of interest, which was imputed to the entire office. Mr. Sisneros requested a special prosecutor be appointed in his case. Later that day, the district court held a hearing on his motion to disqualify the district attorney's office from prosecuting him. During that hearing, the parties discussed the fact that the 180 day speedy trial period would expire on October 25, 2003. Defense counsel stated Mr. Sisneros did not want to waive his right to a speedy trial, and she recognized, therefore, the court might be hesitant to continue the trial. She acknowledged, however, the court could grant a continuance past the 180 day limit if the continuance was required in the

due administration of justice. The State represented it could find a special prosecutor to take the case. The district court did not rule upon the motion at that time.

[¶ 6] Later that day the district court held another hearing with the parties. During that hearing, which was conducted over the telephone and inadvertently was not reported, the parties discussed the options available to them regarding Mr. Sisneros' right to a speedy trial, including proceeding with the trial and prohibiting Mr. Forwood from testifying or dismissing the case without prejudice to allow a special prosecutor to be appointed. Apparently, the State represented it preferred to dismiss the charges against Mr. Sisneros without prejudice, and defense counsel acknowledged the State had the right to do so. At the conclusion of the hearing, the district court understood the parties had agreed to a dismissal without prejudice. A deputy district attorney signed a motion to dismiss without prejudice on Friday, October 24, 2003. The motion was not filed, however, until Monday, October 27, 2003, on which date the district court entered the order dismissing the case without prejudice. Mr. Sisneros filed a notice of appeal of the dismissal without prejudice, and that case was assigned Wyoming Supreme Court Docket No. 04–15.

[¶ 7] A special prosecutor acting on behalf of the State filed an information against Mr. Sisneros on October 24, 2003. The special prosecutor later amended the information to charge Mr. Sisneros with additional counts based upon the same course of conduct as the original information. He was arraigned on those charges on December 1, 2003, and entered "not guilty" pleas on all charges. The trial was set for February 17, 2004.

[¶ 8] On February 2, 2004, the public defender who had been representing Mr. Sisneros filed a notice of change of defense counsel. She indicated that the public defender's office had a conflict of interest and could not continue to represent Mr. Sisneros because he had filed a grievance against her with the Wyoming State Bar. The public defender's office then contracted with a private attorney to represent Mr. Sisneros, and he filed an

entry of appearance on February 4, 2004. Mr. Sisneros' new attorney filed a demand for a speedy trial and a motion for a continuance on the same day he filed his entry of appearance. The trial was reset for March 16, 2004. Mr. Sisneros subsequently filed a motion to dismiss the charges with prejudice for lack of a speedy trial and a motion for a hearing to determine whether the victim, KF, was competent to testify. The district court held a hearing on Mr. Sisneros' motion to dismiss and concluded he had not been denied his right to a speedy trial. The district court also held a hearing to determine whether KF was competent to testify and concluded she was.

[¶ 9] In light of the district court's rulings, Mr. Sisneros and the State entered into a plea agreement in which he pled guilty to two counts of third degree sexual assault and the remainder of the charges were dismissed. He, however, reserved his right to appeal the district court's denial of his motion to dismiss for lack of a speedy trial and its determination that the victim was competent to testify. The district court sentenced Mr. Sisneros to serve 10 to 12 years of imprisonment on the first count and 18 to 20 years on the second count. The court ordered the sentences be served consecutively, but suspended the sentence on the second count and placed Mr. Sisneros on probation for a period of 20 years. He then filed a notice of appeal, which this Court docketed as Supreme Court Docket No. 04–237. Docket Nos. 04–15 and 04–237 were, subsequently, consolidated for review by this Court.

## DISCUSSION

### A. Speedy Trial

[¶ 10] Mr. Sisneros asserts his right to a speedy trial was violated. He claims the State violated W.R.Cr.P. 48 when it did not either bring him to trial or dismiss the first case within 180 days after his initial arraignment. He also claims he was denied a speedy trial in violation of the Sixth Amendment to the United States Constitution and Article 1, § 10 of the Wyoming Constitution.

[¶ 11]   We consider first whether his right to a speedy trial under W.R.Cr.P. 48(b) was violated.  That rule provides, in pertinent part:

(b) *Speedy trial.*

* * *

(2) A criminal charge shall be brought to trial within 180 days following arraignment unless continued as provided in this rule.

(3) The following periods shall be excluded in computing the time for trial:

(A) All proceedings related to the mental illness or deficiency of the defendant;

(B) Proceedings on another charge;

(C) The time between the dismissal and the refiling of the same charge;  and

(D) Delay occasioned by defendant's change of counsel or application therefor.

* * *

(5) Any criminal case not tried or continued as provided in this rule shall be dismissed 180 days after arraignment.

[¶ 12]   In the first case, Mr. Sisneros was arraigned on April 28, 2003.  On October 24, 2003, the prosecutor signed a motion to dismiss the charges against Mr. Sisneros.  The motion was not filed on that day, and the 180 day limit expired on October 25, 2003, which was a Saturday.  The State's motion to dismiss was filed on Monday, October 27, 2003, and the district court dismissed the charges without prejudice on that same day.  Mr. Sisneros argues his case was not dismissed until the 182nd day after he was arraigned and he was, therefore, entitled to a dismissal with prejudice in accordance with W.R.Cr.P. 48(b)(5).

[¶ 13]   In response, the State contends the case was dismissed within the speedy trial period because the 180 day period ended on a Saturday and W.R.Cr.P. 45(a) applies.  That rule provides in pertinent part:

In computing any period of time, the day of the act or event from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday ... in which event the period runs until the end of the next day which is not one of the aforementioned days.

[¶ 14]   Although this Court has never directly addressed whether Rule 45 applies to the calculation of the speedy trial period, other jurisdictions have applied their rules, which are similar to Wyoming's, to extend their speedy trial deadlines.  For example, federal courts have applied F.R.Cr.P. 45 to extend the deadline for filing indictments and bringing a case to trial under the federal Speedy Trial Act, 18 U.S.C. §§ 3161 through 3174.  See e.g., *United States v. Arbelaez*, 7 F.3d 344, 348 (3rd Cir.1993);  *United States v. Wright*, 990 F.2d 147, 149 (4th Cir.1992);  *United States v. Johnson*, 953 F.2d 1167, 1171–72 (9th Cir.1992). Similarly, Ohio courts have applied Ohio's Rule of Criminal Procedure 45(a) to that state's speedy trial statutes, Ohio Rev.Code Ann. 2945.71.  See e.g., *State v. Wilson*, 1992 Ohio App. LEXIS 340 (Ohio Ct.App.1992).

[¶ 15]   In Wyoming, the argument for applying Rule 45 to the speedy trial deadline is even stronger because that deadline is included within our rules of criminal procedure, rather than a statute.  W.R.Cr.P. 45 expressly provides that it applies to *any* period of time and does not exclude the speedy trial provisions of W.R.Cr.P. 48 from its operation.  Applying Rule 45 to the facts of this case, it is clear the charges against Mr. Sisneros were dismissed before the 180 day speedy trial period set out in Rule 48 expired.  Consequently, there was no violation of his right to a speedy trial under Rule 48.

[¶ 16]   In the second part of Mr. Sisneros' speedy trial argument, he claims his constitutional right to a speedy trial was violated because nearly a year passed between the time of his original arrest and his conditional guilty plea.  Every criminal defendant is entitled to a speedy and public trial under the Sixth Amendment to the United States Constitution and Article 1, § 10 of the Wyoming Constitution.  *Walters v. State*, 2004 WY 37, ¶ 10, 87 P.3d 793, 795 (Wyo.2004).  In reviewing a district court's decision on whether a defendant's constitutional right has been violated, we apply the *de novo* standard of review.  *Berry v. State*, 2004 WY 81, ¶ 17, 93 P.3d 222, 227–28 (Wyo.

2004). The district court's findings of fact on the speedy trial issue are reviewed for clear error. *Walters,* ¶ 9.

[¶ 17] The test enunciated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, (1972) applies to constitutional speedy trial claims. *Berry,* ¶ 31. "Under that test, we consider four factors in determining whether a speedy trial violation has occurred: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant." *Id.* We consider the factors together and balance them in relation to all of the relevant circumstances of the delay in bringing a defendant to trial. *Walters,* ¶ 10; *Barker,* 407 U.S. at 533, 92 S.Ct. 2182. The ultimate question is "whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial." *Walters,* ¶ 10 quoting *Warner v. State,* 2001 WY 67, ¶ 10, 28 P.3d 21, 26 (Wyo.2001). When a defendant's constitutional right to a speedy trial is violated, the charges must be dismissed with prejudice. *Walters,* ¶ 10.

[¶ 18] Turning to the first factor of the *Barker* test—the length of the delay, we note that, for constitutional claims, "the speedy trial clock begins ticking upon arrest." *Taylor v. State,* 2001 WY 13, ¶ 6, 17 P.3d 715, 718 (Wyo.2001). There is no specific length of delay which automatically constitutes a violation of the constitutional right to a speedy trial. We have, however, held that a delay of 500 days was presumptively prejudicial, *Berry,* ¶ 32; while, delays of 372, 355, and 319 days, respectively, warranted further analysis. See, *Whitney v. State,* 2004 WY 118, ¶ 40, 99 P.3d 457, 471 (Wyo.2004).

[¶ 19] In this case, Mr. Sisneros was initially arrested on March 28, 2003, and entered his conditional guilty plea on March 11, 2004, resulting in a total delay in resolution of his case of 349 days. As we acknowledged in *Berry,* once a defendant's speedy trial right has attached, it continues until the case is finally resolved. *Berry,* ¶ 32 (quoting LaFave, Israel, and King, 4 *Criminal Procedure,* § 18.1(c), pp. 670–71)). In cases, like this one, where the charges are dismissed and then refiled, the general rule is the "time between the dismissal and recharging [is] not counted, provided of course that the defendant is not held in custody in the interim awaiting the new charge." *Id.* In this case, the charges were refiled concurrently with the dismissal of the original charge. Thus, there was no time when the charges were not pending. See *Caton v. State,* 709 P.2d 1260, 1265 (Wyo.1985). Consistent with our prior cases, we conclude a delay of 349 days between Mr. Sisneros' arrest and the final resolution of his case warrants examination of the other factors.

[¶ 20] We turn, therefore, to the reasons for the delay. In conducting this analysis we determine which party was responsible for the delay.

> "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."

*Wehr,* 841 P.2d at 112–13 (quoting *Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Official bad faith in causing delay is weighed heavily against the government. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. "Delays attributable to the defendant are deducted from the equation." *Jennings v. State,* 4 P.3d 915, 921 (Wyo.2000). "We weigh any delay properly attributable to the defendant against the delay chargeable to the State. We have frequently acknowledged a defendant may defeat his claim to a speedy trial by his own dilatory practices." *Wehr,* 841 P.2d at 113.

*Whitney,* ¶ 42.

[¶ 21] Several of the early trial settings were continued, apparently because of the district court's crowded docket and its

practice of stacking trial settings. Although Mr. Sisneros did not object and the reason is weighted less heavily, those delays still inure to the State. The continuance of the trial from October 7, 2003, to October 21, 2003, was originally requested by the State because its investigator would not be available to testify during that week. At the hearing on the motion, defense counsel remarked she was having the videotaped interview of the victim reviewed by an expert witness and, therefore, needed the extra time to sufficiently prepare for the trial. The district court, consequently, treated the motion as a joint motion for a continuance. Finding no error in its analysis, we defer to the district court on that matter and conclude the two week delay is attributable to both parties.

[¶ 22] The trial did not go forward on October 21, 2003. On October 14, 2003, the defense filed a motion to disqualify the entire Laramie County District Attorney's Office and requested appointment of a special prosecutor because it had recently learned Laramie County District Attorney Jon Forwood was listed as a witness for the State. The district court held a hearing on the defense motion on the same day it was filed. In discussing this motion, defense counsel noted that while Mr. Sisneros did not want to waive his right to a speedy trial, a continuance could be granted as required in the due administration of justice. W.R.Cr.P. 48(b)(4)(B)(iii). There was no decision made about a trial setting at that hearing, but later in the day, the parties had an unreported telephone conference with the district judge. In recalling that hearing, it was the district court's understanding that the parties agreed to the dismissal without prejudice in order to avoid a speedy trial violation under Rule 48. Had that not been the district court's understanding, the trial would have gone forward, perhaps without Mr. Forwood's testimony or with a finding about whether there was a true conflict of interest within the district attorney's office, and/or with findings regarding the due administration of justice to allow an extension of the speedy trial deadline. Consequently, the delay caused by the dismissal and refiling is attributable to both parties.

[¶ 23] The case was then refiled and initially set for trial on February 17, 2004. Thereafter, the defendant filed a grievance against his public defender, resulting in the appointment of a new attorney to represent him and a defense motion for a continuance of the February 17th trial date, which was granted by the district court. The case was finally resolved on March 11, 2004. Obviously the delay after February 17th was attributable to Mr. Sisneros.

[¶ 24] In speaking to the motion to dismiss, the district court made the following comments which are relevant to our analysis of this issue:

... I'm certainly not suggesting that defense counsel at any time ever waived or attempted to waive Mr. Sisneros' right to a speedy trial. I don't recall that happening. But what the Court does recall is that there was a motion to disqualify the state that was filed by the defense in this case that led to the issue with regards to Mr. Forwood potentially being called as a witness.

The Court [had] taken that motion under advisement. There were suggestions as to a way to handle that: Bring in new counsel, eliminate Mr. Forwood as a witness, order the state to somehow go to trial anyway, extend the time for trial, take a look at whether or not administration of justice could allow for the extension of that case for trial, examine any of the underlying factors with regards to whether or not what time should count, what time shouldn't count with regards to calculating 180 days.

* * *

... [I]t doesn't seem to be appropriate for somebody to have a speedy trial right and somebody stay in jail for close to 180 days, have the case dismissed without prejudice and then refile.

That seems like that can go on forever and then there would never be any violation of any speedy trial right if that is ... allowable. I don't know whether that is allowable or not, frankly....

I note that with regards to this file, in this case, that this motion to dismiss

charges for prejudice for lack of speedy trial was not filed until March 9th of 2004.

The Court also notes that there's a court order in this case requiring that all motions be filed two weeks prior to the trial deadline. This motion is untimely under that order. And I guess the question is should the Court allow some sort of break for the failure to comply with that order.

The Court also notes in this file that there was a motion to continue that was filed in February. Motion to continue February 4th that was filed by Mr. Sisneros.

There's nothing that is being brought to the attention of the Court today that could not have been brought to the Court's attention the day that the new information was filed and this new lawsuit commenced. I don't know what any of that means legally to tell the truth.

I'm going to deny this motion to dismiss for lack of speedy trial. And I do so because it does feel to the Court like there's manipulation going on that is and I'm not saying any of it is intentional; I'm just saying that I know from my perspective as a judge this case either would have gone to trial absent that agreement from counsel on the date it was scheduled for trial [October 21, 2003] and what the Court perceived to be an agreement of counsel with regards to this dismissal without prejudice situation on the date that it was scheduled to go to trial in October before the 180 days had run.

The witnesses would have been allowed to be called to that trial, whether or not Mr. Forwood would have been allowed, or alternatively there may have been a continuance granted with regards to that if the Court found that in the administration of justice that would have been appropriate in that case. I'm not sure how that all would have been resolved.

I do know that I was never given the opportunity to address that and would have addressed that if I did not have the understanding this dismissal without prej-

udice was agreed to. And there has been no violation of any speedy trial with regards to this new case file that has been filed, also no demand has been made with regards to bringing this thing on early.

[¶ 25] Some of the delays in the case were certainly attributable to the State, like the docketing problems. Other delays were caused directly by Mr. Sisneros, such as the appointment of a new attorney to represent him in February of 2004. With regard to the delay caused by the dismissal of the first case and the appointment of a special prosecutor to bring the second case, the district court's point is particularly well taken. Although the district court expressed some concern about the potential for recurrent dismissals to delay trials, it obviously believed, in this case, Mr. Sisneros agreed to have the case dismissed without prejudice so that a special prosecutor could be appointed. While the State bears the responsibility for creating the need for the dismissal by listing Mr. Forwood as a witness so near to the trial date, with the predictable result of objections being raised to his testimony since his office represented the State, Mr. Sisneros' concurrence with the dismissal prevents the delay from being fully attributable to the State.[1] That procedural move, alone, accounts for several months in delay. We conclude, therefore, on the whole, the reason for the 349 day delay is neutral, weighing evenly in favor of and against each party.

[¶ 26] In discussing the third factor, whether the defendant affirmatively asserted his right to a speedy trial, we have stated:

it is not necessary for a defendant to assert his right to a speedy trial in order to identify a speedy trial violation. However, we can, and do, consider whether the right was asserted, and how vigorously, in determining the reasonableness of any delay. The action or inaction of the defendant in this regard is a reflection of the actual amount of prejudice being experienced.

*Whitney*, ¶ 52 (citations omitted).

[¶ 27] Mr. Sisneros did file a formal demand for a speedy trial in both actions, al-

---

1. We do consider the State's eleventh-hour declaration that it intended to call the district attorney to testify as a fact witness in this case to be highly unusual. If the record did not so clearly indicate Mr. Sisneros consented to the dismissal without prejudice, we would be inclined to weigh this factor much more heavily against the State.

though his demand in the second case was not filed until several months after he had been charged. The concerns expressed by the district court, which we quoted above, are relevant to a determination of the vigor with which Mr. Sisneros asserted his speedy trial right. While he ostensibly continued to demand a speedy trial throughout the proceedings, he also engaged in procedural maneuvers which had the result of delaying the trial. Most notable were the request for appointment of a special prosecutor and perceived agreement to the dismissal without prejudice in the first case and his grievance against his public defender which resulted in the appointment of a new defense attorney and another continuance of the trial in the second case. Accordingly, we find that this factor is also neutral.

[¶ 28] Finally, we consider the prejudice Mr. Sisneros suffered as a result of the delay in resolution of his case. A demonstration of prejudice is not necessary to establishing a constitutional violation; however, in conducting a speedy trial analysis the prejudice suffered by the defendant should be considered. *Berry,* ¶ 46. "Prejudice may consist of: '1) lengthy pretrial incarceration; 2) pretrial anxiety; and, 3) impairment of the defense.' " *Id.,* quoting *Harvey v. State,* 774 P.2d 87, 96 (Wyo.1989).

> Of these factors, the possibility that a defendant's defense will be impaired is the "most serious" factor "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Pretrial anxiety "is the least significant" factor and because a "certain amount of pretrial anxiety naturally exists," the appellant must demonstrate that he suffered "extraordinary or unusual" pretrial anxiety.

*Whitney,* ¶ 54 (citations omitted). Under the circumstance of this case, the length of the delay, alone, does not raise a presumption of prejudice. Moreover, the fact that Mr. Sisneros' actions led to a significant amount of the delay weighs against a finding of presumed prejudice. See, *Whitney,* ¶ 55. Thus, the defendant has the burden of showing actual prejudice. *Id.*

[¶ 29] The only claim of actual prejudice Mr. Sisneros makes is the length of his pretrial incarceration. It appears from the record he was incarcerated continually from the time of his arrest in March 2003 until the case was resolved in March 2004. There is no question, during this time, his liberty was severely restricted and his extended incarceration necessarily affected his "employment opportunities, financial resources and association" with family and friends. *Berry,* ¶ 48. Thus, without question, Mr. Sisneros suffered some prejudice as a result of the delay.

[¶ 30] Nevertheless, when we consider all of the factors together, we conclude the district court did not err by refusing to grant Mr. Sisneros' motion to dismiss with prejudice for lack of a speedy trial. Although a delay of nearly a year warrants careful analysis, the length of the delay was not so excessive that it resulted in a presumption of prejudice. The critical aspect of this case is the parties' relative contributions to the delay. As we noted above, Mr. Sisneros demanded and received a special prosecutor and new defense counsel. Although Mr. Sisneros obviously suffered some prejudice as a result of the delay, his part in that delay weighs against finding he was denied his constitutional right to a speedy trial. The district court correctly ruled Mr. Sisneros was not entitled to a dismissal of his case for violation of his constitutional rights.

### B. Competency of Victim to Testify

[¶ 31] Mr. Sisneros filed a motion requesting a competency/taint hearing. At the hearing, he withdrew his claim of taint and the district court proceeded to determine whether KF was competent to testify. Mr. Sisneros claims the district court erred by ruling KF was competent to testify at trial against him.

[¶ 32] Pursuant to W.R.E. 601, any person is competent to be a witness unless he is otherwise disqualified from testifying. Our precedent discusses the specific requirements for competency:

> "A person is generally competent to testify if he can understand, receive, remember and narrate impressions and is sensible to

the obligations of the oath taken before testifying."

*Watters v. State,* 2004 WY 155, ¶ 14, 101 P.3d 908, 914 (Wyo.2004) (some citations omitted). The district court has broad discretion in determining whether a witness is competent to testify. *Id.* See also, *Larsen v. State,* 686 P.2d 583, 585 (Wyo.1984).

[¶ 33] With regard to children, "[i]ntelligence, not age, is the proper criteria" in determining the competency of a witness. *Larsen,* 686 P.2d at 585. The difficulty with cases involving the allegations of sexual improprieties with young children is evident. As we stated in *Larsen:*

"... On the one hand, in accepting the testimony of a child there is the danger that she may not be telling the truth, in which event an innocent man may be convicted of crime and suffer the consequences thereof. On the other, if the child's testimony is not accepted, a man guilty of crime, and possibly with the potential for more such, will go free. In this connection, it must be borne in mind that when such an offense [assaulting and taking indecent liberties upon a child] is committed, it is done with the greatest possible stealth and secrecy, so that most often the testimony of the victim, coupled with the type of corroboration we have here, is the only evidence available upon which to determine guilt or innocence. The fact that there are difficulties involved should not prevent the processes of justice from functioning."

*Larsen,* 686 P.2d at 585–86, quoting *State v. Smith,* 16 Utah 2d 374, 401 P.2d 445, 447 (1965). Recognizing these concerns, "once the child's competency is called into question by either party, it is the duty of the court to make an independent examination of the child to determine competency, and that determination will not be disturbed unless shown to be clearly erroneous." *Watters,* ¶ 14. A five-part test is utilized to determine the competency of child witnesses:

"(1) an understanding of the obligation to speak the truth on the witness stand;

(2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it;

(3) a memory sufficient to retain an independent recollection of the occurrence;

(4) the capacity to express in words his memory of the occurrence; and

(5) the capacity to understand simple questions about it."

*Id.,* quoting *Larsen,* 686 P.2d at 585.

[¶ 34] Mr. Sisneros' argument focuses on a few select statements made by the victim during the competency hearing which indicated a lack of understanding of the questions posed to her. A representative sample of the statements relied upon by Mr. Sisneros follows:

Q. Is it better to tell the truth or to say I don't remember?

A. Yes.

Q. Is it better—I will ask you the question again. Is it better to tell the truth when it is hard to tell the truth, or can you just say I don't remember instead of telling the truth?

A. I don't remember.

We agree that, when some of KF's statements are taken in isolation, they are troubling. Nevertheless, the district court was charged with determining whether or not KF was competent to testify based upon the entirety of her testimony.

[¶ 35] KF was eight years old at the time of the trial and six years old when the assaults took place. At the competency hearing, in response to questions about her obligation to tell the truth while "in court," she indicated she understood that responsibility and repeated numerous times that lying was "bad." She knew her age, birthday, school, grade level, and her teacher's name. KF was able to recall the names and ages of friends who lived near her when the assaults took place and identified the different people and pets who lived with her at that location. After KF faltered on a few questions, the State called a social worker who was employed by the Department of Family Services to testify at the competency hearing. The social worker testified that KF has a language disability which affects "some aspects of communication." Describing the ef-

fect of this condition upon KF's ability to testify, the social worker testified:

> One aspect of the disability is her ability to translate what she's hearing and answering, so she needs time. You ask her a question, she needs time to process it because if you interrupt that train of thought with another question, she's lost that part of the question and moves on to the next one. So you need to [s]pace out your questions so she can have time to process it.

When questioned about the effect of her language disability on her memory, the social worker testified: "She has the memory. She needs time to process the question so she can access the memory then say it."

[¶ 36] In rendering its ruling on KF's competency to testify, the district court recognized her testimony was not perfect. The district judge explained, however, on the whole, he believed KF understood her obligation to tell the truth. The court also concluded that, although she may not be a particularly effective witness because she occasionally did not follow the line of questioning, KF did have the mental capacity to receive an accurate impression of the charged events and a memory sufficient to retain an independent recollection of those events. The district court judge also stated that, despite some difficulty expressing herself, KF had the capacity to describe her memory of the occurrences and to understand simple questions about them.

[¶ 37] Mr. Sisneros focuses on the fact that KF's testimony at the competency hearing about the charged events was not consistent with her previous statements. This argument does not speak so much to KF's competency, as to her credibility. The weight to be accorded her testimony would have, of course, been left to the finder of fact if the case had gone to trial. See *Watters,* ¶ 18 (discussing the distinction between competence and credibility). By pleading guilty, Mr. Sisneros forewent his opportunity to argue the inconsistencies in her testimony to the finder of fact.

[¶ 38] On this record, we must defer to the district court's finding that KF was competent to testify. The district judge is in the best position to make that determination as he is the one

> "who sees the proposed witness, notices [the witness'] manner, ... apparent possession or lack of intelligence and may resort to any examination which will tend to disclose [the witness'] capacity and intelligence, as well as his [or her] understanding of the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review, unless from that which is preserved it is clear that it was erroneous."

*Larsen,* 686 P.2d at 585 (citations omitted). We agree with the district court's analysis and certainly cannot conclude its finding was clearly erroneous.

[¶ 39] Affirmed.