2008 WY 109

**Matthew Christopher KURTENBACH, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–07–0289.**

Supreme Court of Wyoming.

Sept. 18, 2008.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; and Eric M. Alden, Sr. Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric Johnson, Faculty Director, PAP; Brian Hunter, Student Director; and Laura J. Derry, Student Intern. Argument by Ms. Derry.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Matthew Christopher Kurtenbach (Kurtenbach), entered a conditional plea of guilty to the crime of making a false statement to obtain credit, in violation of Wyo. Stat. Ann. § 6–3–612(a) (LexisNexis 2007).[1] The condition was that Kurtenbach be authorized to appeal the district court's denial of his motion to dismiss the informa-tion based upon a claim that his right to a speedy trial was violated.

## ISSUE

[¶ 2] The only issue raised by Kurtenbach is that the district court erred in denying his motion to dismiss based on lack of a speedy trial. The State contends that when the analysis articulated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is applied to the circumstances of this case, Kurtenbach's speedy trial claim fails.

## FACTS AND PROCEEDINGS

[¶ 3] Kurtenbach committed the crime at issue on October 7, 2004. On March 2, 2005,[2] an information was filed in the circuit court of Weston County charging Kurtenbach with three felonies that he was alleged to have committed in the process of applying for a loan from a bank to buy a motor vehicle. A warrant for Kurtenbach's arrest was signed and filed in the court on March 9, 2005. The warrant was entered into NCIC on July 28, 2006, and he was arrested on that date. It is the delay in entering the arrest warrant into NCIC that forms the core of Kurtenbach's speedy trial issue. It is acknowledged by the State that Kurtenbach would likely have been arrested much sooner if the warrant had been timely entered into NCIC.

[¶ 4] Kurtenbach was arraigned on August 31, 2006, and released on bond, after which he returned to South Dakota. In a letter mailed from the South Dakota Penitentiary on December 26, 2006, and filed in the district court on December 28, 2006, Kurten-

---

1.  § 6–3–612. False written statements to obtain property or credit; penalties.

   (a) A person is guilty of a felony punishable by imprisonment for not more than five (5) years, a fine of not more than five thousand dollars ($5,000.00) or the amount of the credit sought or obtained, whichever is greater, or by both fine and imprisonment, if he knowingly makes or uses a false written statement of the financial condition of himself or another person with intent that the statement be relied upon to procure the delivery of property, the payment of cash, the making of a loan, the extension of credit, the discount of an account receivable or the making, acceptance, discount, sale or endorsement of a bill of exchange or promissory note for the benefit of himself or another person.

   (b) A person is guilty of a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00) or the amount of the credit sought or obtained, whichever is greater, or by both fine and imprisonment, if he knowingly makes or uses a false written statement to a pawnbroker with respect to the ownership of property with intent that the statement be relied upon to procure from the pawnbroker the payment of cash, the making of a loan, the extension of credit or the discount of an account receivable for the benefit of himself or another person.

2.  The information was signed by the prosecutor on Monday, February 28, 2005, but was not filed in a court until Wednesday, March 2, 2005.

bach stated that: "I am stating on record that I do not waive my right to a speedy trial." On May 2, 2007, Kurtenbach filed a motion to dismiss for lack of a speedy trial. That motion was denied by order entered on May 14, 2007. The district court's basis for denying the motion was orally delivered at the conclusion of the hearing on the motion and was premised on the circumstance that Kurtenbach failed to demonstrate that he had been prejudiced in any significant way by the State's failure to more promptly serve the arrest warrant. The plea agreement was entered of record on May 10, 2007, reserving Kurtenbach's right to appeal the denial of his speedy trial motion. The hearing on that motion was conducted on May 10, 2007. Judgment was entered on September 5, 2007, and sentence was entered on October 3, 2007. An amended notice of appeal was filed on October 22, 2007.

[¶ 5] From March 2005 until October 2005, Kurtenbach was in the South Dakota State Penitentiary in Springfield, South Dakota. Thereafter, Kurtenbach was placed on parole status in South Dakota. He lived and worked in Rapid City, had weekly contact with his parole officer, and his name was in the phone book. In January of 2005, Kurtenbach contacted the Weston County Attorney's Office to find out if there were charges pending against him, and he was informed that there were none. Kurtenbach's parole was revoked, and he was returned to prison in South Dakota. He remained there until he was arrested upon his release from South Dakota's custody in July of 2006. It was Kurtenbach's theory that had Wyoming afforded him a more speedy disposition of the charges against him, he would have been arrested in October of 2005 at the very latest. However, because the South Dakota authorities did not become aware of the Wyoming arrest warrant, Kurtenbach was prejudiced because he was not able to resolve that matter in a timely fashion and was, perhaps, denied the opportunity to be able to serve his sentences concurrently.

## DISCUSSION

[¶ 6] Kurtenbach's argument is premised on the application of the speedy trial right guaranteed by the Sixth Amendment to the United States Constitution. The Wyoming Constitution contains a virtually identical right in art. 1, § 10. Since 1972, we have treated those two provisions as identical, i.e., our state constitution provides no greater rights than those found in the Sixth Amendment, and we have used the analysis adopted by the United States Supreme Court whether speaking of the Sixth Amendment or art. 1, § 10 of the Wyoming Constitution. *Cosco v. State*, 503 P.2d 1403, 1405 (Wyo.1972); *Harvey v. State*, 774 P.2d 87, 91–98 (Wyo. 1989); *Phillips v. State*, 835 P.2d 1062, 1068–70 (Wyo.1992); *Potter v. State*, 2007 WY 83, 158 P.3d 656, 664–66 (Wyo.2007). That analytical framework was first articulated in *Barker*. We have employed that test many times:

... Every criminal defendant is entitled to a speedy and public trial under the Sixth Amendment to the United States Constitution and Article 1, § 10 of the Wyoming Constitution. *Walters v. State*, 2004 WY 37, ¶ 10, 87 P.3d 793, 795 (Wyo. 2004). In reviewing a district court's decision on whether a defendant's constitutional right has been violated, we apply the de novo standard of review. *Berry v. State*, 2004 WY 81, ¶ 17, 93 P.3d 222, 227–28 (Wyo.2004). The district court's findings of fact on the speedy trial issue are reviewed for clear error. *Walters*, ¶ 9.

The test enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, (1972) applies to constitutional speedy trial claims. *Berry*, ¶ 31. "Under that test, we consider four factors in determining whether a speedy trial violation has occurred: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant." *Id.* We consider the factors together and balance them in relation to all of the relevant circumstances of the delay in bringing a defendant to trial. *Walters*, ¶ 10; *Barker*, 407 U.S. at 533, 92 S.Ct. 2182, 33 L.Ed.2d 101. The ultimate question is "whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial." *Walters*, ¶ 10 quoting *Warner v. State*, 2001

WY 67, ¶ 10, 28 P.3d 21, 26 (Wyo.2001). When a defendant's constitutional right to a speedy trial is violated, the charges must be dismissed with prejudice. *Walters,* ¶ 10.

*Sisneros v. State,* 2005 WY 139, ¶¶ 16–17, 121 P.3d 790, 796–97 (Wyo.2005); also see *Strandlien v. State,* 2007 WY 66, ¶¶ 5–19, 156 P.3d 986, 989–92 (Wyo.2007).

[¶ 7] It was alleged that Kurtenbach committed the crime at issue on October 4, 2004. His claim of delay is the elapsed time between the date the information was filed in the circuit court (March 2, 2005)[3] and the time he was arrested (July 28, 2006), combined with the time between his arrest and the time he entered a conditional plea of guilty (May 14, 2007). Kurtenbach's guilty plea is identified in the record as an *Alford* plea, i.e., a plea that allows an accused to voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime. See *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). As noted above, Kurtenbach does not claim a violation of speedy trial as required by W.R.Cr.P. 48. This is not the usual sort of speedy trial claim that we see, but there are many such cases from other jurisdictions that provide guidance for us here. C.C. Marvel, Annotation, *Delay Between Filing of Complaint or Other Charge and Arrest of Accused as Violation of Right to a Speedy Trial,* 85 A.L.R.2d 980 (1962; Later Cases A.L.R.2d, at 199–221 (2001) and Supp.2008)). In *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 2689–94, 120 L.Ed.2d 520 (1992), Doggett was arrested 8½ years after he was indicted. The Supreme Court held that: (1) The 8½-year lag sufficed to trigger a speedy trial inquiry (it was six times as long as that generally deemed sufficient to trigger judicial review); (2) the government was to blame for the delay; (3) Doggett asserted his speedy trial right in a timely manner; and (4) the delay presumptively prejudiced his ability to prepare an adequate defense. This

detail from the *Doggett* opinion provides us with a template for analyzing Kurtenbach's claims in the instant case:

Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down. We attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question. See [*United States v.*] *Loud Hawk, supra,* [474 U.S. 302] at 315–317, 106 S.Ct., [648] at 656–657[, 88 L.Ed 2d 640 (1986)]. Thus, in this case, if the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as Doggett could not show specific prejudice to his defense.

The Government concedes, on the other hand, that Doggett would prevail if he could show that the Government had intentionally held back in its prosecution of him to gain some impermissible advantage at trial. See Brief for United States 28, n. 21; Tr. of Oral Arg. 28–34 (Feb. 24, 1992). That we cannot doubt. *Barker* stressed that official bad faith in causing delay will be weighed heavily against the government, 407 U.S., at 531, 92 S.Ct., at 2192, and a bad-faith delay the length of this negligent one would present an overwhelming case for dismissal.

Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him. It was

---

3. Kurtenbach asks that the delay be counted beginning with February 28, 2005, the day the prosecuting attorney signed the information, rather than the day it actually was filed in the circuit court. However, this difference in counting the length of the delay does not affect our reasoning or the outcome of this case.

on this point that the Court of Appeals erred, and on the facts before us, it was reversible error.

*Barker* made it clear that "different weights [are to be] assigned to different reasons" for delay. *Ibid.* Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, cf. *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. But even so, the Government's egregious persistence in failing to prosecute Doggett is clearly sufficient. The lag between Doggett's indictment and arrest was 8 1/2 years, and he would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights. The portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays "extraordinary." See *Barker, supra,* 407 U.S., at 533, 92 S.Ct., at 2193. When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, see n. 1, *supra,* and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, *e.g.,* 407 U.S., at 534–536, 92 S.Ct., at 2194–2195, nor persuasively rebutted, the defendant is entitled to relief.

*Doggett,* 112 S.Ct. at 2693–94 (footnotes omitted).

[¶ 8] In this case, we first identify the "delay" problem as being about 17 months in length. During much of that time, Kurtenbach was incarcerated in South Dakota and could readily have been located. The reason for the delay is best categorized as negligence in the nature of oversight, a simple failure to enter the arrest warrant in the NCIC system. Once the arrest was entered into that system, Kurtenbach was located and arrested within hours. Kurtenbach asserts that he contacted the Weston County Attorney's Office on one occasion to determine if there were charges pending against him there. He claims that he was told there were no charges pending. Once he was arrested, Kurtenbach, a man well experienced with the criminal justice system, immediately demanded a speedy trial. The delays thereafter are largely attributable to Kurtenbach, and he does not press any issue with the delay between the date of his arrest and the date he pled guilty (and/or the date he would have been tried had he not pled guilty). The district court did not make detailed findings about Kurtenbach's claim of prejudice in defending against the charges against him, other than calling them speculative. Kurtenbach claimed that he had no recollection of the events of October 4, 2004. He also claimed that his landlord had disposed of a journal that might have aided him in recapitulating what he was doing on that date and, perhaps, developing an alibi defense. While Kurtenbach accepted that the State established a factual basis for his guilty plea, he made no admissions of guilt at the time he entered his guilty plea.

[¶ 9] We have considered these facts and circumstances in their totality, and we conclude that no presumption of prejudice arises because of them. Kurtenbach's claims of

prejudice are speculative and not credible. We can perceive no apparent prejudice to his ability to defend against the charges made against him by the State of Wyoming because of the delay in serving the arrest warrant on him. Furthermore, we are unable to conclude that Kurtenbach's right to a fair trial was substantially impaired by the State's delay in effecting his arrest.

## CONCLUSION

[¶ 10]  The judgment and sentence of the district court are affirmed.