2012 WY 155

**Donald Paul HUTCHINSON,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. S–12–0034.

Supreme Court of Wyoming.

Dec. 13, 2012.

Representing Appellant: Elisabeth M.W. Trefonas, Assistant Public Defender, Jackson, WY.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; and Jeffrey Pope, Assistant Attorney General.

Before KITE, C.J., HILL, VOIGT, BURKE, and DAVIS, JJ.

HILL, Justice.

[¶ 1] Donald Hutchinson was convicted of one count of sexual abuse of a minor in the second degree. On appeal, he contends that the victim was incompetent to testify and that the district court improperly denied his Motion for Judgment of Acquittal. We will affirm.

## ISSUES

[¶ 2] Hutchinson presents two issues:

1. Because the competency of the child witness was not properly examined and she was not competent to testify, it was clearly erroneous to allow her testimony and Hutchinson's conviction must be reversed.

2. Because there was no evidence beyond a reasonable doubt that Hutchinson had "sexual contact" with the victim, it was an abuse of discretion to deny the Motion for Judgment of Acquittal and Hutchinson's conviction must be reversed.

## FACTS

[¶ 3] In October of 2010, Donald Hutchinson was charged with one count of sexual abuse of a minor in the second degree. The charges against Hutchinson alleged that he inappropriately touched a six-year-old girl's vagina for sexual gratification while bathing her. Hutchinson was the victim's step-grandfather at the time. The victim (HAL) reported the incident to her 14-year-old brother (TL), who then told their grandmother, who reported the information to authorities of the allegations, and an investigation followed. Eventually, the case was tried to a jury on November 7–8, 2011, and Hutchinson was found guilty. He was sentenced to two to eight years at the State penitentiary, and this appeal followed. More facts will be cited hereinafter.

## DISCUSSION

### I. Competency of Child Witness

[¶ 4] The day trial was set to begin, and after seating the jury, the district court addressed the competency of the victim, who was eight years old at the time of trial. The hearing was held outside the jury's presence, and lasted a total of twenty-six minutes. Neither the prosecution nor defense asked questions. Instead, the court conducted the questioning of the child. The court stated at the end of the colloquy that "the information gathered here today [was][in]sufficient to overcome the presumption that she is competent, so I'm going to allow her to testify." On appeal, Hutchinson argues that the victim was not properly examined for competency and was not competent to testify. Hutchinson takes issue with the competency hearing not being conducted until the first day of trial, even though he had filed a competency motion months before. Also, Hutchinson contends that the court's examination of the child was insufficient, and that the child herself showed she did not know what it meant to tell the truth, nor did she have the capacity to testify, to express her memory of the event or to understand questions about the event.

[¶ 5] In response, the State argues that the court conducted a meaningful competency hearing, regardless of when it was held or how long it took, and that the child satisfied this Court's five-part test for competency, which we will discuss below. First, however, we review how this Court

analyzes a district court's findings regarding the competency of a child to testify:

> It is a well-established principle of law that competency of witnesses to testify is a question within the sound discretion of the trial court. However, when children are called into the courtroom to testify, we have held that once the child's competency is called into question by either party, it is the duty of the court to make an independent examination of the child to determine competency, and that determination will not be disturbed unless shown to be clearly erroneous.

*English v. State*, 982 P.2d 139, 145 (Wyo. 1999) (internal citations and emphasis omitted). We must give a considerable amount of deference to the trial court because it "is in a far better position to judge the demeanor, truth, and veracity of the witness[.]" *Gruwell v. State*, 2011 WY 67, ¶ 25, 254 P.3d 223, 231 (Wyo.2011). Therefore,

> "[w]e do not presume to place ourselves in the shoes of the trial court in these cases by reading a cold record. The trial court sees the witness' facial expressions, hears inflections in [his] voice and watches [his] mannerisms during examination. These observations are a vital part of the ultimate ruling on competency."

*Id.* (quoting *Seward v. State*, 2003 WY 116, ¶ 32, 76 P.3d 805, 819 (Wyo.2003)).

*Mersereau v. State*, 2012 WY 125, ¶ 5, 286 P.3d 97, 103–04 (Wyo.2012). Also speaking to witness competency, Rule 601 of the Wyoming Rules of Evidence presumes that "[e]very person is competent to be a witness except as otherwise provided in these rules." This Court has further said that

> "A person is generally competent to testify if he can understand, receive, remember and narrate impressions and is sensible to the obligations of the oath taken before testifying." *Simmers v. State*, 943 P.2d 1189, 1199 (Wyo.1997). Further, a witness' intelligence, not his age, should guide a court in determining whether the witness is competent to testify. *Baum v. State*, 745 P.2d 877, 879 (Wyo.1987).

*Mersereau*, ¶ 6, 286 P.3d at 104. District courts have broad discretion in determining a witness's competency to testify at trial. *Sisneros v. State*, 2005 WY 139, ¶ 32, 121 P.3d 790, 800–01 (Wyo.2005). Also, as we have previously recognized, a competency hearing may be held before or even during trial. *English v. State*, 982 P.2d 139, 147 n. 2 ("We do not, by this decision, mandate the particular time or form of the hearing required. Some cases may be more properly heard prior to trial and some may be more properly heard during trial outside the hearing of the jury.").

[¶ 6] As briefly referenced above, this Court has adopted a five-part test to assist in determining a child's competency to testify. Those five parts are (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words her memory of the occurrence; and (5) the capacity to understand simple questions about it. *Larsen v. State*, 686 P.2d 583, 585 (Wyo.1984). While in *Larsen* this Court sought to diminish the likelihood of false accusations on the witness stand with the five-part test, the Court also recognized the importance of allowing children to testify:

> In this connection, it must be borne in mind that when such an offense [assaulting and taking indecent liberties upon a child] is committed, it is done with the greatest possible stealth and secrecy, so that most often the testimony of the victim, coupled with the type of corroboration we have here, is the only evidence available upon which to determine guilt or innocence. The fact that there are difficulties involved should not prevent the processes of justice from functioning.

*Id.*, 686 P.2d at 586.

[¶ 7] In this case, the district court held a competency hearing and determined that HAL was competent to testify. In doing so, the court noted that HAL could relate details about her life and understood the need to tell

the truth. After a detailed review of the record, we agree with the district court and turn to our five-part test to explain our reasoning.

[¶ 8] First, the test requires that the witness show an understanding of the obligation to speak the truth on the witness stand. HAL responded "yes" when the clerk of court asked if she would tell the truth. She also told the court she promised not to lie and that lying gets you "in trouble." Although Hutchinson points out that HAL said that she did not understand the meaning of the word "oath," we disagree with his conclusion that she failed the first prong of the five-part test. The test does not require an understanding of the word "oath." Other jurisdictions have made the same assessment. It is not necessary that the child be able to define the meaning of an oath but that she know and appreciate the fact that as a witness, she assumes a solid and binding obligation to tell the truth when questioned at trial. *See Smallwood v. State*, 165 Ga. App. 473, 301 S.E.2d 670, 671 (1983).

[¶ 9] Hutchinson connects this case, and specifically this prong of the five-part test, to *Woyak v. State*, 2010 WY 27, 226 P.3d 841 (Wyo.2010) and suggests the length of the hearing was inappropriately short. In *Woyak*, the issue was not necessarily length and length alone but rather that the timing of the hearing did not allow for comprehensive examination of the evidence of taint *and* competency issues together. Here, there was no allegation of taint. Furthermore, there is no magic number of minutes that the court should spend determining competency of a child. Here, the questions were appropriately limited and administered only by the court, thus curtailing the length of the hearing. Most significantly, the child satisfied the first prong when she equated telling the truth as not to lie. As the district court noted, "HAL equated telling the truth as not to lie, I find that—. . . and that is the essential test in determining their competency."

[¶ 10] The second prong of the test focuses on the mental abilities of the witness—the mental capacity at the time of the occurrence concerning which she is to testify, to receive an accurate impression of it. HAL answered questions about her previous and current grade in school, and she knew the name of her previous teacher, as well as her mother and brother, and identified Mr. Hutchinson in the court room. Also, she remembered her age at the time of the abuse. Nevertheless, Hutchinson takes issue with the following line of questions, which occurred during trial:

Q—Have you ever lied?

A—I don't know.

Q—You don't know? You know the difference between telling a lie and telling the truth?

A—Yes.

Q—Okay. You know the difference between trying to remember something and really remembering it?

A—Um, not so much.

. . . .

Q—Okay. Now, you said you told your brother, [TL], about stuff going on with grandpa. Do you remember telling us that?

A—Yes.

Q—Okay, where was your brother at when you told him that?

. . . .

A—In the living room.

Q—Okay. And your brother was staying in a different room?

A—Yes.

Q—And did he just ask you a question about your no-nos?

A—No. He just said, "What's the matter?" And I said, um, nothing. And then he said, "Tell me the truth, please." And then I said what I need[ed] to say.

Q—So what did you need to say?

A—I need to say about my no-nos.

Q—What did you tell [TL], do you remember?

A—Not so much.

Q—You don't remember what you told him?

A—No.

Hutchinson argues that this exchange shows HAL did not have the mental capacity to

testify, to receive an accurate impression of the occurrence, the capacity in words to express her memory thereof, or the capacity to understand simple questions about it. At this point, however, HAL had already been deemed competent to testify. After defense counsel properly objected to the court's finding of competency, the court further found as follows:

> [A]dmittedly, from what I observed, she was not the best witness. She was young, but that doesn't necessarily mean she's not competent. She equated telling the truth as not to lie. I find that—and that is the essential test in determining their competency.
>
> ... she had a recollection of who the Defendant was. She had a recollection of talking to her brother. She did talk about ten years ago. Obviously that was an impossibility, but I don't find that as a matter of her trying to lie. She was just talking about the event that she's here to testify about being a long, long time ago.

[¶ 11] Even if we were to consider the above line of questioning in the context of the child's competency, we do not find that it calls her competency into question. She indicates that she spoke to her brother about her "no-nos," and that she does not remember what else they spoke about. If anything, it shows her capacity to recall events only *related to* the occurrence. Furthermore, when considering her trial testimony, it is clear to this Court that she demonstrated apt mental capacity at the time of the occurrence concerning which she testified. For instance, when asked about where she lived during the incident, she remembered, "Opal." When asked who she lived with in Opal, she stated, "Um, me; my grandpa who used to be my grandpa [Hutchinson]; my grandma; my mom; my brother; and two dogs and two cats." Also, on cross-examination, HAL recalled the names of two friends and remembered that she shared a bedroom with her brother in Opal.

[¶ 12] Bearing in mind the victim's testimony, we turn briefly to our case law—in *Mersereau, supra,* this Court found that the district court's decision finding the victim competent to testify was clearly erroneous.

We stated that while it was clear that the victim could identify the difference between the truth and a lie when asked direct questions about whether something was a truth or a lie, there was no evidence to support the conclusion that he understood the obligation to tell the truth while testifying. We considered it problematic that the victim testified to verifiably untrue information, including how many family members and pets he had. In fact, immediately after being reminded by the district court that he needed to tell the truth, the victim gave incorrect information about how many grandmothers, pets, and sisters he had. Furthermore, we also described significant concern that the victim's imagination regarding his non-existent pets was intertwined with his testimony regarding the allegedly improper sexual incident. To the contrary, in this case there is evidence that the victim understood the obligation to tell the truth while testifying. She knew what it meant to lie and although she could not define the word oath, she was able to equate an "oath" to a "promise." And while there was a misstatement regarding the abuse happening "ten years ago," which HAL equated to "a long time ago," she nevertheless remembered how old she was when the abuse occurred and how old she was at the time of trial, and maintained that position.

[¶ 13] The next prong of the five-part test addresses issues regarding taint, which is not an issue in this instance. As to the last two prongs of the five-part test, (4) the capacity to express in words her memory of the occurrence; and (5) the capacity to understand simple questions about it, neither party disputes that HAL had both the capacity to express her memory of the occurrence and the capacity to understand simple questions regarding the incident.

[¶ 14] It is our conclusion that HAL satisfied the five-part test for witness competency, and the district court was not clearly erroneous in determining that she was competent to testify.

## II. Denial of Motion for Judgment of Acquittal

[¶ 15] In his second and last issue, Hutchinson argues that the district court erred

when it denied his motion for judgment of acquittal at the close of evidence because there was insufficient evidence to convict him. Specifically, he contends that there was insufficient evidence of "sexual contact," in that there was no proof the touching was done for the purpose of sexual arousal, gratification or abuse as required by the statute. The State responds that strong evidence existed to convict Hutchinson, and the district court ruled correctly.

[¶ 16] In *Taylor v. State,* 2011 WY 18, ¶ 10, 246 P.3d 596, 598–99 (Wyo.2011), this Court described the standard applicable to a review of a denial of a motion for a judgment of acquittal:

> Our responsibility in considering the propriety of a ruling on a motion for judgment of acquittal is the same as that of the trial court. *Cloman v. State,* Wyo., 574 P.2d 410 (1978). The question raised is the sufficiency of the evidence to sustain the charge, which is a matter to be determined within the sound discretion of the trial court. *Chavez v. State,* Wyo., 601 P.2d 166 (1979); *Montez v. State,* Wyo., 527 P.2d 1330 (1974). In making that determination the district court must assume the truth of the evidence of the State and give to the State the benefit of all legitimate inferences to be drawn from that evidence. If a prima facie case is demonstrated when the evidence is so examined, the motion for judgment of acquittal properly is denied. *Russell v. State,* Wyo., 583 P.2d 690 (1978). It is proper to grant a motion for judgment of acquittal only if there is no substantial evidence to sustain the material allegations relating to the offense that is charged. *Heberling v. State,* Wyo., 507 P.2d 1 (1973), cert. denied 414 U.S. 1022, 94 S.Ct. 444, 38 L.Ed.2d 313 (1973); *Fresquez v. State,* Wyo., 492 P.2d 197 (1971). Such a result is indicated if the evidence requires the jury to speculate or conjecture as to the defendant's guilt or if a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime when the evidence is viewed in the light most favorable to the

State. *Chavez v. State, supra; Russell v. State, supra.*

*Martinez v. State,* 2009 WY 6, ¶ 11, 199 P.3d 526, 530 (quoting *Aragon v. State,* 627 P.2d 599, 602 (Wyo.1981)).

[¶ 17] In order to prevail at trial, the State was faced with the burden of proving that Hutchinson engaged in sexual contact with HAL. Sexual contact in this instance means "touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate parts by the actor[.]" Wyo. Stat. Ann. § 6–2–301(a)(vi) (LexisNexis 2011). The same statute in section (a)(ii) defines intimate parts to include external genitalia. Hutchinson's argument supposes that there was no evidence to support conviction under the statute. Assuming the truth of the evidence presented by the State and giving that same evidence every favorable inference, we conclude that the district court's decision was proper.

[¶ 18] At trial, defense counsel stated, There is no evidence presented before the Court regarding sexual arousal, gratification. A person can touch inappropriately, can touch an area that's an inappropriate area for touching, but in order for it to be the crime of second degree sexual assault, there has to be the intention of sexual arousal, gratification, or abuse. The evidence presented before the Court lacks any and all of those aspects of sexual contact. Just because there's contact of an intimate part does not comport with sexual contact within the definition of the statutes.

[¶ 19] Directly contradicting that statement, however, are two witnesses whose testimony supported the conclusion by the jury that there was indeed sexual contact. First, Michelle Martinez, who is Mr. Hutchinson's sister, testified that her brother told her "he had touched [HAL] and had gotten into trouble and blamed the whole thing on his now ex-wife because she—they had no sex life." Second, Hutchinson's ex-wife testified that when she asked Hutchinson "why he would touch a small child in the way that he touched her" he did not deny touching her, and said he did so because it was "the right opportunity." Along with the testimony of

those two witnesses, the State also presented strong circumstantial evidence that Hutchinson engaged in sexual contact with HAL. HAL testified that Hutchinson touched her "no-nos" and that she was scared to tell anyone about it because Hutchinson told her to keep it a secret. Perhaps most significantly, the victim's brother testified that HAL told him that Hutchinson also touched her out of the bath and in the bedroom. We find this to be strong evidence of touching for sexual arousal or gratification.

## CONCLUSION

[¶ 20] We conclude the trial court's decision that the child victim was competent to testify was not clearly erroneous. Having passed the five-part test elicited by this Court during an impromptu but proper hearing, finding HAL competent to testify was squarely within the court's sound discretion. Furthermore, after a thorough record review, and accepting the evidence as true and giving every favorable inference thereto, we find that the State presented sufficient evidence to show that Hutchinson engaged in sexual contact with HAL. Thus, we conclude the district court properly denied Hutchinson's Motion for Judgment of Acquittal. Affirmed.